# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-KA-00948-SCT

*DAVID W. DUPLANTIS a/k/a DAVID WAYNE*
*DUPLANTIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/26/95 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DANNYE L. HUNTER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOLENE M. LOWRY |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 3/12/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/9/98 |

**BEFORE SULLIVAN, P.J., BANKS AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. David Duplantis was indicted in the circuit court of Newton County for the capital murder of Gary Thrash during the commission of a robbery on July 18, 1991. Due to Duplantis' extensive criminal record, the indictment charged him as an habitual offender in violation of Miss.Code Ann. § 99-19-81 (1972).

¶2. Duplantis was thereafter convicted of capital murder and given the death penalty. On October 27, 1994, this Court reversed his conviction and remanded the case for a new trial.[(1)]

¶3. A second jury trial commenced on August 22, 1995 in the new venue of Attala County. Once again, Duplantis was convicted of capital murder. This time, however, he was sentenced only to life imprisonment without parole. On September 28, 1995, the trial court entered a *nunc pro tunc* order that sentenced Duplantis as an habitual offender pursuant to Miss.Code Ann. § 99-19-83 (1972). The sentence was originally pursuant to § 99-19-81 (1972).

¶4. Duplantis' motion for judgement of acquittal or new trial was denied on September 1, 1995. Shortly thereafter, Duplantis timely filed this appeal. He assigns the following issues as error.

## ISSUES

**I. WHETHER THE TRIAL COURT DENIED DUPLANTIS' RIGHT TO A SPEEDY TRIAL.**

**II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING DUPLANTIS ACCESS TO HIS ATTORNEY FOR TRIAL PREPARATION.**

**III. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING DUPLANTIS' MOTION TO DISMISS THE INDICTMENT OR IN THE ALTERNATIVE TO COMPEL DISCOVERY OF EXCULPATORY EVIDENCE.**

**IV. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ALLOWING DR. STEVEN HAYNE TO TESTIFY AS AN EXPERT WHEN HE HAD NOT BEEN TENDERED AS SUCH.**

**V. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING JURY INSTRUCTION S-11.**

**VI. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN REFUSING DUPLANTIS' PROPOSED JURY INSTRUCTION DGPS-7.**

**VII. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING DUPLAINTIS' MOTION FOR JNOV/ NEW TRIAL ON THE BASIS THAT THE VERDICT WAS NOT SUPPORTED WITH SUFFICIENT EVIDENCE.**

**VIII. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING DUPLANTIS' MOTION FOR JNOV/ NEW TRIAL ON THE BASIS THAT THE EVIDENCE WAS INSUFFICIENT TO SHOW THAT DUPLANTIS POSSESSED INTENT TO ROB THE VICTIM AT THE TIME OF THE KILLING.**

**IX. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING JURY INSTRUCTIONS S-5 AND S-8.**

**X. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING JURY INSTRUCTIONS S-2 AND S-9 AND IN DENYING DG-12.**

**XI. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ENTERING A NUNC PRO TUNC ORDER AMENDING DUPLANTIS' SENTENCE.**

**XII. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ALLOWING THE STATE TO READ THE PREVIOUS TRIAL TESTIMONY OF ABSENT WITNESS MARY PARKS INTO THE RECORD.**

**XIII. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING DUPLANTIS' REQUEST THAT HE BE ALLOWED TO ACT AS HIS OWN COUNSEL.**

**XIV. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING DUPLANTIS' MOTION TO RECUSE.**

**XV. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING DUPLANTIS' REQUEST FOR A COURT-APPOINTED AND TAXPAYER FUNDED INVESTIGATOR FOR THE DEFENSE.**

**XVI. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING A PORTION OF THE FEES AND EXPENSES FOR DEFENSE COUNSEL.**

**XVII. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING A PORTION OF THE PAYMENT FOR DUPLANTIS' FINGERPRINT EXPERT.**

**XVIII. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING JURY INSTRUCTION S-4.**

**XIX. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING DUPLANTIS' MOTION FOR JNOV/ NEW TRIAL BASED UPON THE SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDING THAT DUPLANTIS WAS AN HABITUAL OFFENDER.**

**XX. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING DUPLANTIS' MOTION FOR JNOV/ NEW TRIAL BASED UPON THE COMPLIANCE WITH THE REQUIREMENTS OF *SEELY v. STATE*.**

## FACTS

¶5. Ken Strickland and David Duplantis escaped from the Lauderdale County Jail on June 14, 1991.[2] Two days later, Ruth Ann Dean read of the escape in her local newspaper and grew fearful. She remembered that Strickland's mother had previously rented a house located only a quarter of a mile from her home, and feared that he might try to seek cover there. The house was located about twelve miles from the jail. Its present occupant was Charlene Thrash.

¶6. Dean called Charlene's ex-husband, Gary Thrash, on the early morning of June 16 and asked him to check on the house. Gary assured her that he would do so later that morning. True to his word, Gary went to the house. A few hours later he was found lying in a pool of his own blood on Charlene's kitchen floor. His pockets had been emptied and his truck had been stolen.

¶7. On June 17, Gary Thrash's truck was found abandoned in Memphis, Tennessee. Among the items recovered from his truck was a pair of bolt cutters. Sometime between June 14 and June 16, burglars had taken a pair of bolt cutters and bubble gum from the Meridian Stockyard. An employee of the Meridian Stockyard testified at trial that the bolt cutters recovered from Thrash's truck were "similar" to the pair taken from the stockyard.

¶8. Dr. Stephen Hayne performed forensic testing on the bolt cutters and an autopsy on Thrash. The tests confirmed the presence of human hair, blood and tissue on the cutters. Dr. Hayne testified that Gary Thrash's mortal wounds were inflicted by an object comparable to the bolt cutters he tested.

¶9. Charlene Thrash's phone records show two incriminating phone calls made from the Thrash residence in the early morning of June 16. One call was made to Duplantis' stepfather. The other was made to the Lauderdale County Jail.

¶10. In order to confirm that the call was made to the jail, the state introduced testimony given by Mary Parks in Duplantis' first trial. Parks' testimony was that at exactly 1:05 a.m. on the morning of June 16 she logged a call from Duplantis into the jailhouse phone log. She did testify, however, that the call was actually received by another officer.

¶11. Physical evidence also indicated that the two escapees were present in Charlene Thrash's home at some point prior to Gary Thrash's brutal murder. Mississippi Highway Patrol crime scene investigator, Don Sumrall, recovered Duplantis' fingerprint from a coffee pot lid in the home. He also found Ken Strickland's fingerprint on a bubble gum container in the residence.

¶12. The two fugitives were apprehended on June 17 by Tennessee authorities in Jackson, Tennessee. They were later extradited to Newton County. Once safely within the confines of their respective jail cells, Duplantis and Strickland were overheard by Willie Graham discussing the cleanup of Charlene Thrash's house.

**DISCUSSION**

## I. WHETHER THE TRIAL COURT DENIED DUPLANTIS' CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL.

¶13. On August 15, 1995, Duplantis filed a Motion to Dismiss with the trial court that states in pertinent part,

> On October 27, 1994, the Mississippi Supreme Court remanded this case for a new trial. Defendant filed his motion for a speedy trial and for access to his attorney in November, 1994, at which time Defendant was housed at the State penitentiary at Parchman, Mississippi. Defendant was moved to the Madison County jail on July 27, 1995, 270 days after the Mississippi Supreme Court remanded this case for a new trial, subsequent to which the charges in the indictment in this case must be dismissed for failure to provide Defendant a speedy trial as he had requested immediately after the remand of this case by the Mississippi Supreme Court. The State, having denied Defendant his speedy trial, is now estopped from trying the issues against him raised by the indictment in this case under both the applicable statute of the State of Mississippi and the Mississippi Constitution as well as the Constitution of the United States of America.

The trial judge responded to this motion by ruling Duplantis' constitutional right to speedy trial had not been violated.

¶14. *Barker v. Wingo*, 407 U.S. 514 (1972) sets forth the test for a defendant's constitutional right to speedy trial. The *Barker* factors are:

> (1) the length of the delay;
>
> (2) the reason for the delay;

(3) the defendant's assertion of his right to a speedy trial; and

(4) whether any prejudice resulted to the defendant as a result of the delay.

*Barker*, 407 U.S. at 530-32.

## A. THE LENGTH OF DELAY

¶15. As for the first factor, the speedy trial clock begins to run for purposes of determining a violation of a defendant's right to speedy retrial on the date this Court reverses his first conviction. *State v. Ferguson*, 576 So.2d 1252, 1254 (Miss.1991). Furthermore, "[c]ommon sense suggests that, ordinarily on retrial, less time will be necessary to bring a case to trial than before." *Id. at* 1254. We have held delays of 370 days, 298 days and 280 days as presumptively prejudicial in initial trials of defendants.[(3)]

¶16. The speedy trial clock began to run in this case on October 27, 1994, the date of the issuance of the mandate in *Duplantis v. State*, 644 So.2d 1235 (Miss.1994). Duplantis was not retried until August 22, 1995, 299 days after the court's reversal. Therefore, the delay in this case is presumptively prejudicial.

## B. THE REASON FOR DELAY

¶17. When determining the reason for the delay, those delays which are not attributable to the defendant will count against the state, unless the prosecution can show good cause. *Vickery v. State*, 535 So.2d 1371, 1377 (Miss.1988). However, a bad motive on the prosecution's part significantly affects the balancing test. *Perry v. State*, 419 So.2d 194, 199 (Miss.1982). In fact, the United States Supreme Court has acknowledged that an intentional delay by the prosecution in order to gain a tactical advantage is improper. *United States v. Marion*, 404 U.S. 307, 324 (1971). Nonetheless, the Court found no error in *Barker* when the prosecution deliberately delayed the defendant's trial for five years while it awaited the outcome of a separate trial of his alleged accomplice in criminal activity. The Court held there was no speedy trial violation because Barker failed to demonstrate prejudice to his defense. The Court particularly noted that Barker made no motion for a speedy trial until the state's twelfth continuance. *Barker v. Wingo*, 407 U.S. at 516-518.

¶18. In the case *sub judice*, the state argued, and the trial court agreed, that it was divested of jurisdiction until the United States Supreme Court ruled upon the state's petition for writ of certiorari on the determinative issue in the first trial. The defense responds by emphasizing that the state neither requested nor received a stay of the mandate issued by this Court after the first trial to "forthwith" try the defendant. Thus, following the defense's argument, jurisdiction was in fact in the circuit court. Accordingly, the defense asserts that the trial judge should suffer a reversal for not proceeding with trial more expeditiously.

¶19. Although Duplantis is technically correct that jurisdiction of this case remained in the trial court, that fact alone does not invalidate the state's reason for delay. The policy goal of the speedy trial requirement is simply that defendants should not be made to wait for trial so long that justice is impaired. *Ross v. State*, 605 So.2d 17, 23 (Miss.1992). The record reveals no action by the state to deliberately delay or impede this case from going to trial in order to gain a tactical advantage. Neither

does it reflect any bad faith on the state's behalf to undermine the defense's resources. Therefore, this factor does not weigh heavily against the state. *Id.*

## C. ASSERTION OF THE RIGHT TO SPEEDY TRIAL

¶20. Duplantis made numerous requests that he be given a speedy trial to the trial judge. His first request came on November 3, 1994, only one week after we reversed his conviction in the first trial. Next, he asserted his right to a speedy trial in a letter to Judge Gordon dated May 23, 1995. On June 2, 1995, he filed a motion requesting that there be no speedy trial delays. He requested a speedy trial again at his motion hearing in July, 1995. He filed a motion to dismiss for lack of a speedy trial on August 15, 1996. He again asserted his right in a letter to Judge Gordon dated August 16, 1995. And, on August 14, 1995, he once again filed a motion asserting his right.

¶21. It is quite clear from the record that Duplantis made his desire for a speedy trial known early and often. This factor, therefore, weighs in favor of Duplantis.

## D. PREJUDICE TO THE DEFENDANT

¶22. Duplantis does not bear the burden of proving actual prejudice in this case. On the contrary, when the length of delay is presumptively prejudicial, the burden of persuasion is on the state to show that the delay did not prejudice the defendant. *State v. Ferguson*, 576 So.2d 1252, 1254 (Miss.1991). However, if the defendant fails to make a showing of actual prejudice to his defense, this prong of the balancing test cannot weigh heavily in his favor. *Polk v. State*, 612 So.2d 381, 387 (Miss.1992).

> Prejudice to the defendant may manifest itself in two ways. First, the delay may actually impair the accused's ability to defend himself. [citation omitted]. Second, the defendant may suffer because of the restraints to his liberty, whether it be the loss of his physical freedom, loss of a job, loss of friends or family, damage to his reputation, or anxiety.

*Polk v. State*, 612 So.2d 381, 386 (Miss.1992) (citations omitted).

### 1. Did the delay actually impair Duplantis' ability to defend himself?

¶23. Notwithstanding the fact that this was the second time Duplantis had to construct a defense based upon these very same facts, he made numerous complaints to the trial court explaining the difficulties he was experiencing in preparing his defense and securing witnesses. Duplantis has failed, however, to explain how these difficulties would have been ameliorated by bringing his case before a jury more quickly. In fact, logic dictates the contrary to be true. The sooner that Duplantis was brought to trial, the less time he would have had to prepare an adequate defense.

¶24. The trial court recognized the time constraints in which Duplantis was working, and offered him a continuance so that he might have ample time to prepare his defense. Duplantis declined this continuance on the basis that if he were to accept the offer, he would lose his right to assert his speedy trial claim on appeal. Duplantis should have accepted. He cannot decline the trial court's offer to grant him more time to prepare a defense, and then argue to us that his defense was inadequate because he lacked time to prepare it. Furthermore, there is no indication in the record that the delay in bringing this case to trial impeded Duplantis' ability to present any witness material to his defense. Neither is there indication that the passing of time faded the memory of any defense witness.

Duplantis' ability to defend himself has not been impaired.

### 2. Did Duplantis suffer unreasonable restraints to his liberty as a result of the delay?

¶25. At the time Duplantis was continuously asserting his right to a speedy trial, he was serving a sentence of life imprisonment without parole for felony jail escape. Thus, the delay in bringing his case to trial did not lead to a denial of personal liberty that Duplantis was not already being restrained from enjoying. While it is true that Duplantis surely felt the anxiety of being accused of a crime that carried a possible death sentence, this anxiety alone does not amount to prejudice worthy of reversal.

### CONCLUSION OF SPEEDY TRIAL ANALYSIS

¶26. Where the delay is neither intentional nor egregiously protracted, and there is a complete absence of actual prejudice, the balance is struck in favor of rejecting a speedy trial claim. **Perry v. State**, 637 So.2d 871, 876 (Miss.1994). Such is the situation in the case *sub judice*.

¶27. Accordingly, this assignment of error is without merit.

## II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING DUPLANTIS ACCESS TO HIS ATTORNEY FOR TRIAL PREPARATION.

¶28. Following the reversal of his first trial, Duplantis made numerous requests for better access to his attorney.[4] On July 27, 1995, the trial judge moved Duplantis from Parchman to the Madison County Jail to accomplish this purpose. On August 15, 1997, Duplantis filed a motion to dismiss because he had not been able to adequately prepare his defense due to the trial court's delay in providing experts, personnel, funds and access. The next day, however, Duplantis filed a letter saying that he did not desire a continuance of his trial, even though he did not feel that he had been allowed enough time to confer with his attorney in preparing his defense.

¶29. Duplantis bases his contention that he was denied his fundamental right of access to his attorney on **McKenzie v. State**, 101 So.2d 651 (Miss.1958). In **McKenzie**, the defendant was charged with capital murder. The trial court appointed nine attorneys to represent the defendant, all of whom failed to confer with him. On the day of the trial, the attorneys filed a motion for continuance alleging a lack of proper opportunity to confer with the accused because he was being held in the Hinds County jail prior to trial rather than in Newton County where the crime had occurred. In overruling the motion for continuance, the court offered to allow the defense counsel to have a thirty minute conference with the accused. This Court held that the trial court was in error by denying the continuance.

¶30. The case *sub judice* is distinguishable from **McKenzie**. Duplantis had the opportunity to continue his case in order that he may be able to adequately confer with his counsel. He chose not to do so. McKenzie did not have this opportunity. Thus, Duplantis was not denied his fundamental right of access to his attorney. He only chose not to exercise it fully.

¶31. Accordingly, this assignment of error is meritless.

## III. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING DUPLANTIS' MOTION TO DISMISS THE INDICTMENT OR IN THE ALTERNATIVE TO COMPEL DISCOVERY OF EXCULPATORY EVIDENCE.

¶32. [URCCC 9.04(A)](#) (formerly Rule 4.06 of the criminal rules) states that the prosecution must disclose:

> 6. Any exculpatory material concerning the defendant.

¶33. Duplantis claims that the prosecution is in violation of this rule by failing to produce plaster casts of tires and foot prints left at the scene, a fireplace poker and shovel taken by evidence technicians at the scene and subsequently turned over to the crime lab for testing, the lab reports of those test results, and the clothing and shoes worn by Duplantis and his codefendant at the time of their arrest. Duplantis contends that neither he nor the trial court could know whether these items could have been useful in his defense unless he had the opportunity to examine them before trial. The state responds that they have turned over every item of evidence in their possession. Additionally, the state suggests that none of the items requested by Duplantis have ever existed.

¶34. This Court was confronted with a similar situation in ***Tolbert v. State***, 511 So.2d 1368 (Miss.1987). In ***Tolbert***, the defendant had a small particle of skin clipped from his finger. This particle of skin was not sent to the Mississippi Crime Laboratory and was apparently lost. Tolbert moved the circuit court to dismiss the indictment against him on the grounds that the skin was material, exculpatory evidence that had been intentionally destroyed or lost by the State. The court denied this motion. This Court stated in regards to the lost skin,

> In analyzing whether the absence of the skin particle denied Tolbert's constitutional right to a fair trial, the Court must determine if the skin particle would have played a significant role in Tolbert's case. To play a significant role in Tolbert's case, the exculpatory nature and value of the skin particle must have been apparent before it was lost, and been of such a nature that Tolbert could not obtain comparable evidence by other means.

***Id.*** at 1373.

¶35. This Court then went on to find that the skin particle would not have played any significant role at trial. ***Id.*** at 1373.

¶36. In the case *sub judice*, we must determine if the evidence alleged missing by Duplantis would have played a significant role in his trial. In so doing, we shall consider the apparent exculpatory nature of this evidence before it was lost in light of the evidence that was readily available at trial. Additionally, we will consider whether the lost evidence was of such a nature that Duplantis could not have obtained comparable evidence by other means.

### A. The Plaster Casts of Tires and Footprints left at the scene

¶37. Considering the evidence presented in the lower court, we do not find that the absence of any such casts rises to the level of reversible error. There is nothing in the record to indicate that such casts were ever taken. Moreover, the evidence is overwhelming that both Duplantis and Strickland were present in Charlene Thrash's residence at some point prior to trial. Both Duplantis and Strickland's fingerprints were found in the house. Phone calls were placed to both the Lauderdale County Jail and Duplantis' stepfather on the morning of Gary Thrash's murder. In short, Duplantis

was present in Charlene Thrash's residence on the day of this murder. Plaster casts of tire tracks and footprints could not have proven otherwise.

## B. The Fireplace Poker and Shovel

¶38. Duplantis contends that he would have been able to prove that the bolt cutters were not in fact the murder weapon in this case had the requested fireplace poker and shovel been produced to him. We disagree.

¶39. Dr. Stephen Hayne performed forensic testing on the bolt cutters recovered from Gary Thrash's abandoned truck. The tests recovered human hair, blood and tissue. The tests also revealed that Thrash's fatal wounds were inflicted by an object similar to these bolt cutters. If another object had been used to facilitate this heinous crime, the testing would have revealed such. It did not. Duplantis did not suffer any material prejudice to his defense due to the absence of this evidence.

## C. Duplantis' Clothing and Shoes

¶40. Although Duplantis indicates that he was not allowed to inspect the clothes that were confiscated from him, the record reflects differently. At the hearing on Duplantis' motion to dismiss, the state said,

> BY MR. TURNER: We have looked in Newton County and found a box of clothes, essentially that's what it was, that was taken by Mr. Harpole to show to Mr. Duplantis in Madison County, and then we have taken everything that our office had to show Mr. Duplantis in Madison County, but that's all we have.

¶41. Duplantis does not allege that these clothes were not the ones confiscated from him. The state suggests that they were. There is no evidence to indicate otherwise. Therefore, we find that Duplantis was fully aware of the potential exculpatory value of this evidence and chose to ignore it.

¶42. After a clear review of the trial record and transcripts, we do not believe Duplantis was prejudiced in the least bit by the absence of this alleged evidence. Duplantis fails to present any compelling evidence of fraud or intentional suppression of the truth on the state's behalf.

¶43. Applying the *Tolbert* standard, this assignment is rejected.

## IV. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ALLOWING DR. STEVEN HAYNE TO TESTIFY AS AN EXPERT WHEN HE HAD NOT BEEN TENDERED AS SUCH.

¶44. Dr. Steven Hayne, the designated pathologist for the State Medical Examiner's Office, was qualified by the district attorney as an expert witness, but was never officially tendered for voir dire to the defense nor formally accepted by the trial court as an expert. When defense counsel raised objections to his answering of questions calling for expert opinion, the trial court overruled the objections.

¶45. "The question of whether an individual is qualified to testify as an expert is committed to the sound discretion of the trial court. This Court does not reverse such decisions absent a showing that

this discretion has been abused, that is, that the witness was clearly not qualified." ***Cooper v. State***, 639 So.2d 1320, 1325 (Miss.1994). Furthermore, voir dire cross examination of a witness unquestionably qualified to give expert testimony is unnecessary when such cross-examination would add nothing to the trial. ***Merritt v. State***, 517 So.2d 517, 519 (Miss.1987).

¶46. Dr. Hayne is unquestionably qualified to testify in our courts as a forensic pathologist. He has done so many times in the past. As such, he is well equipped to give an expert opinion that the wounds suffered by Gary Thrash were inflicted by an object similar to the bolt cutters recovered from Mr. Thrash's truck.

¶47. This assignment of error is without merit.

## V. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING JURY INSTRUCTION S-11.

¶48. Instruction S-11 provides,

> The Court instructs the Jury that any person who is present, aiding and abetting another in the commission of a crime is equally guilty of the crime.

¶49. Duplantis alleged at trial that the instruction should not have been given to the jury because it would "require guesswork, speculation, and conjecture, and would be misleading to the jury." His basis for this conclusion was that "there is no proof to indicate that Mr. Duplantis was aiding or being aided." On appeal, he asks us to review the instruction to determine whether the instruction improperly excluded the element of intent. We cannot. We do not consider matters on appeal that were not placed first before the trial judge for decision. A trial judge cannot be put in error on a matter which was not placed before him for decision. ***Holland v. State***, 587 So.2d 848, 868 (Miss.1991). Furthermore, "an objection on one or more specific grounds constitutes a waiver of all other grounds." ***Conner v. State***, 632 So.2d 1239, 1255 (Miss.1993).

¶50. Therefore, this assignment of error is without merit.

## VI. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN REFUSING DUPLANTIS' PROPOSED JURY INSTRUCTION DGPS-11.

¶51. The trial judge refused to allow the following instruction to be submitted to the jury.

> 1. The Defendant cannot be convicted unless the Jury is satisfied beyond a reasonable doubt that the Defendant by word, act or deed, assisted, encouraged or induced the commission charged in the indictment.

> 2. If the evidence does not satisfy the Jury beyond a reasonable doubt that the accused did participate in the crime, the Jury may not speculate in order to determine he did it, and its's [sic] verdict must be not guilty.

> 3. In order to convict the Defendant the Jury must find from the evidence that the accused took part in the perpetration or preparation of the crime with intent to assist in it, and this must be proven from evidence beyond a reasonable doubt.

4. If all of the above has not been proven by the State, by evidence, you must vote the accused not guilty.

¶52. The state argues that Duplantis is procedurally barred from presenting this assignment of error because he did not object to its denial at the trial level. The state finds its authority for this proposition in *Nicholson ex. rel. Gollot v. State*, 672 So.2d 744, 752 (Miss.1996). Although in *dicta* we indicated that we could impose a procedural bar, we did not intend to overrule existing caselaw and therefore require litigants to object to the denial of instructions that they themselves have offered. Prior precedent of this Court makes it clear that an issue involving the denial of a requested jury instruction:

> ... is procedurally preserved by the mere tendering of the instructions, suggesting that they are correct and asking the Court to submit them to the jury. This in and of itself affords counsel opposite fair notice of the party's position and the Court an opportunity to pass upon the matter. When the instructions are refused, there is no reason why we should thereafter require an objection to the refusal unless we are to place a value upon redundancy and nonsense.

*Carmichael v. Agur Realty Co., Inc.,* 574 So.2d 603, 613 (Miss.1990). We agree with *Carmichael*, and find that Duplantis is not procedurally barred from review of this assignment. He only needed to tender his suggested jury instruction in order to preserve review.

¶53. Jury instructions are reviewed as a whole with no one instruction taken out of context. *Wilson v. State*, 592 So.2d 993, 997 (Miss.1991). We review instructions in this light because we are mindful that "[n]ot every instruction need cover every point of importance, so long as the point is fairly presented elsewhere." *Taylor v. State*, 597 So.2d 192, 195 (Miss.1992). However, if the trial judge failed to present the jury with all the essential elements of the crime, a fundamental error has occurred. *Hunter v. State*, 684 So.2d 625, 635 (Miss.1996).

¶54. Duplantis asserts that without Instruction DGPS-11, the jury was inadequately informed that in order to find him guilty of capital murder he needed to possess the "intent to assist" in the robbery of Gary Thrash prior to Thrash's death. We disagree. Instruction S-11 states that an aider and abetter must be "present." It is difficult to imagine how Duplantis could have been "present, aiding and abetting" Strickland in the murdering and robbing of Gary Thrash and not intend to do so. Furthermore, Instruction S-2 states that,

> If you should find from the evidence beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence, that the Defendant, David Duplantis, *willingly participated* in the robbery of Gary Thrash, *in furtherance of* which the death of Gary Thrash resulted, then it is your duty to return a verdict of guilty as to Capital Murder.

> [emphasis added].

¶55. Reading Instructions S-2 and S-ll together, the jury necessarily had to find that Duplantis was "present" in the midst of this bloody crime scene, "willingly participat[ing] in the robbery of Gary Thrash, in furtherance of which the death of Gary Thrash resulted...." We find that the jury was adequately apprised of the need to find intent to rob prior to the commission of the robbery. Any error that resulted from this instruction had no "substantial influence" on the outcome of this case and

was, therefore, harmless. *California v. Roy*, 117 S.Ct. 337, 338 (1996) (*citing* *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

¶56. This assignment is rejected.

## VII. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING DUPLANTIS' MOTION FOR JNOV/ NEW TRIAL ON THE BASIS THAT THE VERDICT WAS NOT SUPPORTED WITH SUFFICIENT EVIDENCE.

¶57. This Court has continually recited the standard of review applied in criminal cases to challenges to the legal sufficiency of the evidence as follows:

> When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence ... in the light most consistent with the verdict. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fairminded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.

*Garret v. State*, 549 So.2d 1325, 1331 (Miss.1989)(*quoting* *McFee v. State*, 511 So.2d 130, 133-34 (Miss.1987)).

¶58. The evidence indicates that Gary Thrash was murdered and robbed in the home of his ex-wife. Just prior to the discovery of Mr. Thrash's body, David Duplantis and Ken Strickland escaped from the Lauderdale County Jail. The jail is located 10 - 12 miles from Charlene Thrash's home. David Duplantis' fingerprints were found on a coffeepot lid inside the house. Ken Strickland's fingerprints and blood were also recovered from the crime scene.

¶59. A telephone call was made from the Thrash house at 1:05 a.m. to the Lauderdale County Jail. It was logged at the jail as being from David Duplantis. A few minutes later another phone call was made to relatives of Duplantis.

¶60. Gary Thrash's truck was recovered in Memphis, Tennessee. The truck contained a pair of bolt cutters that were similar to a pair stolen from the Meridian Stockyard. Blood, human hair and tissue were discovered on the bolt cutters by forensic testing. Two blocks away from the truck, a Memphis security guard picked up Duplantis and Strickland and gave them a ride to Jackson, Tennessee, where the two men were arrested. Once the escapees were returned to their Newton County jail cell, Willie Graham overheard Duplantis and Strickland discuss the cleanup of the murder scene.

¶61. Considering all the evidence in a light most favorable to the verdict, and giving the prosecution the benefit of all favorable inferences, there exists substantial evidence to uphold this verdict.

¶62. This assignment of error is without merit.

**VIII. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING DUPLANTIS' MOTION FOR JNOV/ NEW TRIAL ON THE BASIS THAT THE EVIDENCE WAS INSUFFICIENT TO SHOW THAT DUPLANTIS POSSESSED INTENT TO ROB THE VICTIM AT THE TIME OF THE KILLING.**

¶63. Duplantis contends that he did not possess the intent to rob the victim until after the killing, and thus the killing could not have been done in the course of the robbery. The State responds that the circumstances surrounding the crime make it apparent that Duplantis possessed such requisite intent, although it arguably culminated into action immediately following Thrash's death.

¶64. This Court was confronted with a similar scenario in *Wheat v. State*, 420 So.2d 229 (Miss.1982). In *Wheat*, we considered the appellant's contention that the evidence was insufficient to prove his intent to commit the robbery underlying the capital murder charge. *Id.* at 238. One victim was found with his hands and feet tied, a bullet through the back of his head; and in due course, the appellant was found in possession of the victim's car and personal possessions. *Id.* at 239. In discussing the troublesome task of determining the defendant's intent this Court said in *Shanklin v. State*, 290 So.2d 625 (Miss.1974):

> Intent to do an act or commit a crime is also a question of fact to be gleaned by the jury from the facts shown in each case. The intent to commit a crime or to do an act by a free agent can be determined only by the act itself, surrounding circumstances, and expressions made by the actor with reference to his intent....

¶65. The Court further said in *Thompson v. State*, 258 So.2d 448 (Miss.1972), the following:

> Unless one expresses his intent, the only method by which intent may be proven is by showing the acts of the person involved at the time in question, and by showing the circumstances surrounding the incident.

> *Wheat*, 420 So.2d at 238-39.

¶66. In *Walker v. State*, 671 So.2d 581, 594-96 (Miss.1995), this Court has reviewed the requisite showing that the State must make in order to prove intent to commit an underlying felony. We stated,

> In *West v. State*, 553 So.2d 8 (Miss.1989), the defendant attempted to prove that he shot and mortally wounded his victim, then sexually assaulted her. On such facts, he argued, he could not have committed the underlying offense since the statute requires non-consensual sexual penetration with another person, a corpse not qualifying as a person.

> This Court rejected West's argument, stating:

> Mississippi law accepts a "one continuous transaction" rationale in capital cases. In *Pickle v. State*, 345 So.2d 623 (Miss.1977), we construed our capital murder statute and held that "the underlying crime begins where an indictable attempt is reached...." 345 So.2d at 626; (further cites omitted). *There is certainly evidence in this record from which the jury could have found Brim alive when West's assault reached this point.* An indictment charging a killing occurring "while engaged in the commission of" one of the enumerated felonies includes the actions of the

defendant leading up to the felony, the attempted felony, and flight from the scene of the felony." *Id.*, *Neal v. State*, 451 So.2d 743, 757-58 (Miss.1984); *Pruett v. State*, 431 So.2d 1101, 1104-05 (Miss.1983). *The fact that the actual moment of the victim's death preceded consummation of the underlying felony does not vitiate the capital charge.*

*Walker*, 671 So.2d at 594 (emphasis added).

¶67. In the case *sub judice*, Duplantis was an escapee from jail. He had no money, nor did he have access to it. It is not beyond the realm of inference to believe that Duplantis first developed the intent to rob Gary Thrash of his truck and money, and then killed Mr. Thrash when he did not cooperate. The jury apparently drew this inference, or one similar thereto, from the facts. We accept the jury's finding. Furthermore, the possibility that the precise moment of Thrash's death may have preceded the actual consummation of the robbery does not vitiate the capital charge. This assignment of error is without merit.

## IX. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING JURY INSTRUCTIONS S-5 AND S-8.

¶68. Initially, we note that Duplantis' objection to these instructions was based upon the sufficiency of the evidence. Duplantis therefore waives his opportunity for appeal on other error possibly contained within these instructions. *Conner v. State*, 632 So.2d 1239, 1255 (Miss.1993). Our review, however, reveals that the jury instructions, read as a whole, sufficiently track the law.

¶69. The trial court granted Instructions S-5 and S-8.[(5)] S-5 reads:

The Court instructs the jury that in a case of capital murder the fact that the victim was dead at the time of taking his property does not mitigate against the conclusion of robbery. If the intervening time between the murder, if any, and the time of the taking of the property, if any, formed a continuous chain of events, the fact that the victim was dead when the property was taken cannot absolve the defendant from the crime.

If you should find from the evidence in this case beyond a reasonable doubt and to the exclusion of every reasonable hypothesis that the Defendant, David Duplantis, killed and murdered Gary Thrash and then, after the said Gary Thrash was dead, took his property; and if you should further find beyond a reasonable doubt that the intervening time between the time of the murder, if any, and the time of the taking of property, if any, formed a continuous chain of events, the fact that Gary Thrash was dead when the property was taken does not absolve the Defendant from the crime of Capital Murder.

¶70. We follow the "continuous chain of events" theory in capital cases, as we outlined in the preceding assignment of error. When read in conjunction with Instruction S-2, Instructions S-5 and S-8 correctly outline this theory.[(6)] Therefore, this assignment is without merit.

## X. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING JURY INSTRUCTIONS S-2 AND S-9.

¶71. Duplantis asserts that the trial judge erred by allowing these instructions because they allowed the jury to convict him without requiring the State to prove malice aforethought, as charged in the

indictment. The relevant court documents read as follows:

The June 1991 indictment charged:

That Ken C. Strickland and David W. Duplantis late of the County aforesaid, on or about the __ day of June in the year of our Lord, 1991, in the County and State aforesaid, and within the jurisdiction of this Court did willfully, unlawfully, feloniously, and without the authority of law, and of their malice aforethought, kill and murder Gary Thrash, a human being, while they, the said Ken C. Strickland and David W. Duplantis, were then and there engaged in the commission of the crime of robbery, contrary to and in violation of Section 97-3-19(2)(e), Miss. Code Ann. (1972), as Amended, against the peace and dignity of the State of Mississippi.

¶72. Instruction S-2 instructed the jury as follows:

The Court instructs the Jury that with reference to this case the term Capital Murder means the killing done with or without any design to effect the death by any person engaged in the crime of robbery.

¶73. Instruction S-9 instructed the jury as follows:

The Court instructs the Jury that capital murder is the killing of a human being without the authority of law, when done with or without design to effect death, by any person engaged in the commission of the crime of ... robbery ... or in any attempt to commit such felonies.

The killing of a human being without the authority of law by any means or in any manner shall be simple murder when done with malice aforethought, and not in necessary self-defense.

¶74. Duplantis objected at trial and contends on appeal that S-2 and S-9 constructively and unconstitutionally amended the indictment because they broaden the elements of the offense, thereby allowing him to be convicted on a ground not alleged by the grand jury. Duplantis, therefore, concludes that his rights under the United States and Mississippi Constitutions have been violated.

¶75. Felony murder may be charged as "malice aforethought," "premeditated design," or "deliberate design" murder in the indictment. At trial, the jury should be instructed in language that tracks the indictment. However, if the instruction fails to contain this language, the instruction is not necessarily fatally defective. *Doss v. State*, 93-DP-00509-SCT, 1997 WL 770606 (Miss. Dec. 15, 1997); *Berry v. State*, 575 So.2d 1, 13 (Miss. 1990). Furthermore, intent to kill is not a necessary element of felony murder "'when a person is slain during the course of a robbery.'" *Doss*, 1997 WL 770606, at *19 (*quoting* *Griffin v. State*, 557 So.2d 542, 549 (Miss.1990)).

¶76. No error exists within the instructions given in this case. Although the instructions may not accurately follow the indictment, they do accurately follow the requisite elements of the crime.

¶77. This assigment is rejected.

## XI. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ENTERING A NUNC PRO TUNC ORDER AMENDING DUPLANTIS' SENTENCE.

¶78. Duplantis was indicted as an habitual offender pursuant to Miss.Code Ann. § 99-19-81 (1972).

At a separate hearing, the trial judge entered an order finding that Duplantis was indeed an habitual criminal as indicted. On September 29, 1995, without notice to Duplantis, the trial court entered a nunc pro tunc order changing the habitual section number from § 99-19-81 to § 99-19-83, and sentenced Duplantis to life pursuant to the latter statute.

¶79. In **Dalgo v. State**, 435 So.2d 628, 630 (Miss.1983), this Court held that if an indictment was sufficient to apprise a defendant that the state was seeking to impose a life sentence without chance for probation or parole, the inclusion of the statutory section number was not essential to the validity of the indictment. The Court noted that the indictment in question listed the principal charge and the "previous convictions with the required particularity." **Id.** (*quoting* **Osborne v. State**, 404 So.2d 545, 548 (Miss.1981)).

¶80. In this case, both § 99-19-81 and § 99-19-83 carry the same punishment of life imprisonment without possibility of probation or parole. Therefore, Duplantis was well aware that the state was seeking to impose a life sentence without the chance for probation or parole. Any error committed by the trial court was harmless.

¶81. Accordingly, this assignment of error is lacking in merit.

## XII. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ALLOWING THE STATE TO READ THE PREVIOUS TRIAL TESTIMONY OF ABSENT WITNESS MARY PARKS INTO THE RECORD.

¶82. The following colloquy transpired in the trial court.

> BY MR. TURNER: Your Honor, at this time, we would call Mary K. Parks. She testified in the first trial. However, she has since moved out of the state somewhere and can't be found. We have issued three different subpoenas for her at three different places and just can't find her, and we would ask to read her testimony into the record.
>
> * * * *
>
> Your Honor, this witness at the time of the first trial was a jailer in Lauderdale County. When the time came to issue subpoenas for this trial, we again issued a subpoena to her at that place, and were advised at that time she no longer worked there.
>
> I had the Sheriff's Office in Newton County work to obtain a new address for her. They found a specific address in Quitman, and I issued a new subpoena for her in Quitman that was attempted to be served, and they were told at time that she moved out of state.
>
> I reissued a third subpoena and asked the Newton County Sheriff's Office to continue to work even over this past weekend to try to find her. They had received some word she might possibly be in Alabama somewhere, and Mr. Duncan just handed me a note that Ron Davis just gave him that he has received some information she lives in an apartment project in Demopolis, Alabama, called the Hilltop or the Circle, but other than that, this is the first anywhere close to a location we have been able to find her, and that's out of state, and that was just found this morning.

> BY THE COURT: Well, I think the State has met the test in that the witness is unavailable. That she appears now to be a resident of the State of Alabama as opposed to the State of Mississippi. Further, I think you probably have the testimony there before you in the transcripts of the former trial of this case, where she did testify, at which time you cross-examined her regarding her testimony. Therefore, your objection is overruled.

¶83. In order to use the former testimony of a witness, the prosecution must prove the unavailability of the witness by diligent effort. *Mitchell v. State*, 572 So.2d 865, 869 (Miss.1990). However, "the prosecution's burden is to demonstrate diligent effort, not to do everything conceivable." *Id.* at 869. Nothing in the record suggests that Parks' testimony would have been substantially impeached had she been present. Further, Duplantis was allowed to introduce impeachment testimony of the telephone log records through his expert.

¶84. Accordingly, this assignment of error is without merit.

## XIII. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING DUPLANTIS' REQUEST THAT HE BE ALLOWED TO ACT AS HIS OWN COUNSEL.

¶85. Prior to trial, the trial judge gave Duplantis the option to be represented by himself with Mr. Hunter, or by two attorneys. The judge denied Duplantis' request to be represented by two attorneys compensated by the court, plus himself. But, the court did allow a second attorney to participate in the defense uncompensated. At trial, both attorneys conducted examination of the witnesses and Duplantis was allowed to make a closing argument.

¶86. An indigent criminal defendant is not entitled to expert counsel or to counsel of his own choosing, but only reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). The amount of money counsel is paid does not make the counsel effective or ineffective. *Hansen v. State*, 592 So.2d 114, 153 (Miss.1991).

¶87. It is clear from the record that Duplantis was able to participate in his trial. In addition to actively advising his counsel, he gave his own closing argument. Accordingly, this assignment of error is without merit.

## XIV. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING DUPLANTIS' MOTION TO RECUSE.

¶88. Duplantis filed a motion to recuse based upon Judge Gordon's relationship to Rex Gordon, Jr., one of the attorneys appointed by Judge Gordon to represent Duplantis at his first trial. Rex Gordon, Jr. is the nephew of Judge Gordon. Prior to Judge Gordon's ascendance onto the bench, the two were law partners. Judge Gordon denied Duplantis' motion.

¶89. This Court presumes that a judge, sworn to administer impartial justice, is qualified and unbiased. To overcome the presumption, the evidence must produce a reasonable doubt about the validity of the presumption. *Turner v. State*, 573 So.2d 657, 678 (Miss.1990). Duplantis fails to offer any evidence to indicate Judge Gordon was biased in any way. His decisions were sound and his judgment fair. Therefore, this assignment is rejected.

## XV. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING DUPLANTIS' REQUEST FOR A COURT-APPOINTED AND TAXPAYER FUNDED INVESTIGATOR FOR THE DEFENSE.

¶90. Duplantis filed a "Motion for Trial Preparation Expense Funds" asking that "an expert criminal investigator for the purpose of assisting Defendant and counsel in the investigation of this case and the preparation of the trial of this case" be appointed. An accused is required to offer concrete reasons for requiring assistance of an investigator. *Hansen v. State*, 592 So.2d 114, 125 (Miss.1991). "'[U]ndeveloped assertions'" that an investigator would be helpful are not sufficient reason to warrant granting such assistance. (*quoting Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985)).

¶91. Duplantis' motion failed to provide the name, propose the cost, or specify the purpose of the investigator. Duplantis did write a letter to the trial judge suggesting that he had found an investigator who charged $40.00 per hour, but he never came forward with any other facts or circumstances surrounding the investigator. Duplantis heard most of the witnesses in this case testify, and knew of the substance of their statements before they were given in open court. Furthermore, this is Duplantis' second trial on these very same facts. He has had ample time and opportunity to explore and develop the nooks and crannies of the circumstances surrounding his case. The trial court did not abuse its discretion in denying Duplantis' motion for an investigator.

## XVI. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING A PORTION OF THE FEES AND EXPENSES FOR DEFENSE COUNSEL.

¶92. Duplantis' attorney complains that $3,000.00 of his out of pocket expenditures were not paid by the court. He cites *Wilson v. State*, 574 So.2d 1338 (Miss.1990) for the proposition that he was additionally entitled to another $25.00 per hour. Duplantis' attorney has overlooked a crucial point. An appeal of the order of attorney's fees and expenses is properly filed in a civil action, not in the direct appeal of the defendant's conviction. In fact, *Wilson* itself is a companion case filed as a civil action. Accordingly, this assignment is not properly before us at this time.

## XVIII. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING JURY INSTRUCTION S-4.

¶93. Duplantis objected to jury instruction S-4 based upon two grounds. The first basis was that the state failed to offer any proof to support the instruction. The second was that the instruction omits an essential element of the crime charged in the indictment. On appeal, Duplantis argues that the instruction shifts the burden of proof to the defendant to prove that he did not commit the robbery, and is therefore coercive.

¶94. The instruction reads in pertinent part,

> [I]t is your duty to accept the law given to you by the Court; and if the facts and the law warrant a conviction of the crime of Capital Murder, then it is your duty to make such finding uninfluenced by your power to find a lesser offense. This provision is not designed to relieve you from the performance of an unpleasant duty. It is included to prevent a failure of justice if the evidence fails to prove the original charge but does justify a verdict for the lesser crime.

¶95. We find that *Mack v. State*, 650 So.2d 1289, 1323 (Miss.1994) is dispositive of this issue. In *Mack*, the defendant failed to object to the issuance of a jury instruction at trial, and was procedurally barred on appeal.

¶96. In the case at bar, Duplantis failed to object at trial on the same grounds that he alleges on appeal. "The rule is that when counsel objects to evidence, he must point out to the trial judge the specific reason for or the ground of the objection or else the objection is waived." *Norman v. State*, 302 So.2d 254, 259 (Miss.1974).

¶97. This assignment is rejected.

## XIX. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING DUPLANTIS' MOTION FOR JNOV/ NEW TRIAL BASED UPON THE SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDING THAT DUPLANTIS WAS AN HABITUAL OFFENDER.

¶98. Duplantis claims that State Exhibits 19 and 20, which were introduced during the habitual offender hearing, were insufficiently verified and failed to show that he had ever been convicted. Accordingly, Duplantis claims that the evidence presented by the State was insufficient to support the finding that he was an habitual offender.

¶99. State's Exhibit 19 is a certified copy of information and judgment in Cause 163, 304 wherein Duplantis was convicted of simple burglary and sentenced to serve a term of five years imprisonment. It was retrieved from the 32nd Judicial District of Louisiana, Parish of Terrebone, Louisiana.

¶100. State's Exhibit 20 is a certified copy of information of att empted armed robbery, a waiver of all constitutional rights, plea of guilty and judgment in Cause 166, 640. It was also obtained from the 32nd Judicial District, Parish of Terrobone, State of Louisiana, wherein Duplantis was convicted of attempted armed robbery and sentenced to serve a term of five years imprisonment.

¶101. Certified copies of indictments and sentencing orders are sufficient to prove prior criminal convictions for habitual offender sentencing. *Moore v. State*, 631 So.2d 805, 806 (Miss.1994). Duplantis does not dispute the accuracy of the documents introduced against him. These records are sufficient evidence that Duplantis was a habitual offender.

## XX. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING DUPLANTIS' MOTION FOR JNOV/ NEW TRIAL BASED UPON THE COMPLIANCE WITH THE REQUIREMENTS OF *SEELY V. STATE.*

¶102. A record must be made at a bifurcated hearing on habitual offender sentencing. *Seely v. State*, 451 So.2d 213, 215 (Miss.1984). Duplantis received just this. In fact, he makes no claims that he did not. Therefore, this assignment is rejected.

## <u>CONCLUSION</u>

¶103. Finding no reversible error in the trial court proceedings, we affirm the conviction of David W. Duplantis for capital murder and his sentence of life in prison without the benefit of probation or parole.

**¶104. CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT BENEFIT OF PAROLE, SUSPENSION, OR REDUCTION OF SENTENCE WITH THIS SENTENCE TO RUN CONSECUTIVELY TO ANY SENTENCE PREVIOUSLY IMPOSED AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS AND WALLER, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**

1. *See **Duplantis v. State***, 644 So.2d 1235 (Miss.1994).

2. Duplantis' conviction of felony jail escape was affirmed on October 17, 1995 by the Mississippi Court of Appeals. He is currently serving a life sentence without parole for that conviction.

3. See ***Smith v. State***, 550 So.2d 406, 408 (Miss.1989); ***Bailey v. State***, 463 So.2d 1059, 1062 (Miss.1985); ***Atterberry v. State***, 667 So.2d 622, 627 (Miss.1995).

4. (1) Motion for Defendant to Have Access to Attorney; November 1, 1994. (2) Motion of Notice of Defendant's Active Participation in Defense; December 5, 1991. (3) Letter to trial judge stating that his attorney was not answering his letters or phone calls; May 23, 1995. (4) Motion for Access to Attorney; June 26, 1995. (5) Motion to Dismiss; August 15, 1995. (5) Motion of Objection to Denial of Access to Attorney until One month before trial date is set to begin; August 15, 1995.

5. These instructions are identical except that S-5 contains the circumstantial evidence language requiring proof to the exclusion of every reasonable hypothesis consistent with innocence, while S-8 does not. For this reason, we only quote S-5.

6. In order for this crime to have occurred as a continuous chain of events, the robbery must have reached the stage of being an indictable attempt prior to the victim's death. As we discussed in Assignment VI, the jury found that Duplantis was "present" and "willingly participating in the robbery of Gary Thrash, in furtherance of which the death of Gary Thrash resulted...." Such a finding necessarily encompasses Duplantis' intent to rob the victim prior to this death.