DICKINSON, Justice,
Specially Concurring.
¶ 214. Although I concur with the majority opinion, I write separately to address Goffs argument that the evidence was insufficient to establish the underlying felony of robbery. In essence, the only proof of robbery in this case is that Goff was discovered soon after the murder with the victim’s property. This Court has long and consistently held that no more than this single piece of circumstantial evidence is needed to create a jury question as to the robbery.
¶ 215. In Wheat v. State, 420 So.2d 229 (Miss.1982), Joseph Mayer and Teresa Hayes married and traveled to the Mississippi Coast for their honeymoon. Id. at 230. After a phone conversation with Mayer’s father, they were not seen or heard from again until their bodies were *673 found in a wooded area north of Gulfport. Id. at 231. Their hands and feet were tied behind them, and each was shot in the back of the head. Id.
11216. After it was reported that the Mayers had been driving a 1976 Cutlass with a Kentucky license plate, four witnesses came forward and stated that a man had come to their house and asked for assistance getting a car of that description out of a ditch. Id. From the witnesses’ descriptions a composite sketch was made and circulated. Id. Kenneth Wheat was arrested and indicted by a Harrison County grand jury for capital murder, with the underlying crime of robbery. Id. The jury found him guilty and sentenced him to death.
1(217. Wheat appealed, claiming, inter alia, that he should not receive the death penalty because there was no proof of the crime of robbery in connection with the alleged murder. Id. at 238. This Court affirmed Wheat’s conviction, stating:
At approximately 9:30 p.m. on the night Joseph Mayer [34] was killed, he was at the Worth Motel on the beach 26 miles from where he was killed that same night. The jury found that appellant killed him. Approximately two and one-half hours after the young couple were together at the motel, appellant appeared at the Netto home with the Mayer car which place was approximately 1.4 miles from where Mayer was killed. Appellant was in complete possession of the Mayer car, along with its contents, consisting of a leather case, luggage, books, camera, radio, baseball bat, and maps.
[[Image here]]
Fully considering the history of all that occurred on the night in question, the condition of Mayer’s body with his hands and feet tied, and a bullet hole through the back of his head and shortly thereafter appellant being solely in full possession of the Mayer vehicle and its contents, is clearly a question for the jury as to whether or not he “robbed” Mayer of his car. There certainly is no other reason shown in this record for the brutal murder of young Mayer.
Id. at 238-39.
¶ 218. In Billiot v. State, 454 So.2d 445 (Miss.1984), Wallace Croll, Jr., his wife and daughter were found bludgeoned to death in them home. Id. at 451. The bodies were found by 12-year-old Stephen Croll and some of his friends, after they saw defendant James Billiot driving Wallace Croll’s car and became suspicious. Id. When the bodies were found, an all-points bulletin was issued in Mississippi and Louisiana, and two days later Billiot was arrested. Id. He was tried and convicted of capital murder and sentenced to death.
¶219. Billiot appealed, claiming, inter alia, that the verdict was against the overwhelming weight of the evidence because the State failed to prove the underlying felony of robbery. Id. at 462-63. This Court affirmed Billiot’s conviction, stating:
Billiot was seen driving away from the scene in the car owned by the deceased Croll. Billiot also admitted he took $60.00 from Wallace Croll’s wallet. The issue of intent was a question of fact for the jury. Having been properly instructed on the elements of robbery and capital murder, taking the evidence as a whole, it was reasonable for the jury to conclude that Billiot committed the mur *674 der while engaged in the crime of robbery.
Id. at 463.
¶ 220. In Fisher v. State, 481 So.2d 203 (Miss.1985), Melinda Weathers was reported missing when she failed to return home from a softball game. Her car was later found abandoned along Highway 11/80 outside of Meridian. Id. at 206. Four days later, her naked body was discovered by a search party on an old logging trail outside of Meridian. Id. After the discovery of Melinda’s body, law enforcement authorities theorized that the suspect might be the same individual that had stopped and raped another female near that area. Id. Authorities organized a decoy operation designed to attract a suspect whose mode of operation was to stop lone female drivers along Highway 11/80. Id. at 207.
¶ 221. A month after Melinda’s body was found, the decoy was driving along Highway 11/80 when a pickup truck approached her car from behind and flashed its lights. Id. When the driver of the pickup approached the car, a detective who was hiding in the backseat jumped out and arrested the man, defendant Larry Fisher. Id. After Fisher’s arrest, a gold pendant and the back of an earring were discovered in his truck. Id. Melinda’s mother identified the gold pendant as Melinda’s. Id. at 207-08.
¶ 222. Fisher was subsequently charged with the capital murder of Melinda Gail Weathers while he was engaged in the crimes of rape and robbery. Id. at 210. After a trial, the jury found him guilty of capital murder and sentenced him to death. Id. at 211. Fisher appealed, claiming, inter alia, that the State’s evidence was legally insufficient to establish certain elements of the crime of capital murder, particularly the underlying felonies of rape and robbery. Id.
¶ 223. Although this Court reversed and remanded the case for a new trial in a different venue, this Court stated that the evidence of robbery was sufficient for a conviction:
There is evidence that Fisher took from Melinda Gail Weathers several pieces of jewelry, personal property having some value, although modest. The same evidence mentioned above [speaking of evidence of the rape] would enable any reasonable juror to conclude beyond a reasonable doubt that this taking was by violence to her person or by putting her in fear of immediate personal injury. Fisher’s felonious intent is similarly shown by that which the established facts and circumstances show that he did. Wheat v. State, 420 So.2d 229, 238-39 (Miss.1982); Voyles v. State, 362 So.2d 1236, 1242-43 (Miss.1978). We hold that the evidence in this case was legally adequate to establish that Larry Fisher committed the underlying felony of robbery of Melinda Gail Weathers.
481 So.2d at 214.
¶ 224. In Duplantis v. State, 708 So.2d 1327 (Miss.1998), Gary Thrash went to his ex-wife’s house to check on her after he heard that two prisoners had escaped. Id. at 1333. His body later found lying in a pool of his own blood on his ex-wife’s kitchen floor. Id. His pockets were empty, and his truck was missing. Id. Thrash’s truck was subsequently found abandoned in Memphis, Tennessee. Id.
¶ 225. After investigating two phone calls made from the residence where the murder had taken place, the police arrested Ken Strickland and David Duplantis in Jackson, Tennessee. Id. at 1334. Duplan-tis was indicted, tried and convicted for the capital murder of Gary Thrash and sen *675 tenced to life in prison without parole.[35] Id. at 1331. He appealed, claiming, inter alia, that he did not possess the intent to rob the victim until after the killing, and thus the killing could not have been done in the course of the robbery. Id. at 1341. This Court affirmed his conviction, stating:
In the case sub judice, Duplantis was an escapee from jail. He had no money, nor did he have access to it. It is not beyond the realm of inference to believe that Duplantis first developed the intent to rob Gary Thrash of his truck and money, and then killed Mr. Thrash when he did not cooperate. The jury apparently drew this inference, or one similar thereto, from the facts. We accept the jury’s finding. Furthermore, the possibility that the precise moment of Thrash’s death may have preceded the actual consummation of the robbery does not vitiate the capital charge. This assignment of error is without merit.
Id. at 1342.
¶ 226. In Knox v. State, 805 So.2d 527 (Miss.2002), while responding to a missing person report, authorities found the victim dead in the trunk of her car in her carport. Id. at 529. After discovering the body, the sheriff left the scene to interview people in the community to “develop a suspect.” Id. at 529-30. An informant told him that Steve Knox was involved in the victim’s death. Id. at 530. Authorities began searching for Knox based on the description given to them by the informant. Id.
¶ 227. Officers found Knox walking in a field close by. Id. The officers questioned Knox about the victim, and Knox denied knowing her. Id. One of the officers noticed some small “brownish reddish” spots on Knox’s left thigh and decided to take Knox to the sheriffs station. Id. At the station, one of the officers found a set of keys in Knox’s back pocket, which were later determined to be the victim’s missing house and car keys.
¶228. An Amite County grand jury indicted Knox for capital murder while in the commission of a robbery pursuant to Miss.Code Ann. § 97-3-19. Id. After a trial, the jury found him guilty of capital murder and sentenced him to death. Id. Knox appealed, claiming, inter alia, that the State presented insufficient evidence of the underlying crime of robbery. Id. at 531. We upheld the conviction, stating:
It is not necessary that the victim be deprived of property prior to death to sustain a conviction for robbery. West v. State, 463 So.2d 1048, 1056 (Miss.1985). “An indictment charging a killing occurring ‘while engaged in the commission of [robbery]’ includes the actions of the defendant leading up to the felony, the attempted felony, and flight from the scene of the felony.” West v. State, 553 So.2d 8, 13 (Miss.1989). See also Turner v. State, 732 So.2d 937, 950 (Miss.1999). “Intent to do an act or commit a crime is also a question of fact to be gleaned by the jury from the facts shown in each case.” Shanklin v. State, 290 So.2d 625, 627 (Miss.1974). Fully considering the crime in question, the location of Spears’ body in the trunk of her car, and the keys to that car in Knox’s possession even after he changed his clothes, it is clearly a question for the jury whether Spears was robbed or whether it was Knox’s intent to rob her. Unquestionably, the proof demonstrates that Spears was strangled which caused large amounts of blood to accumulate in her lungs, which would have resulted in a slow, heinous death. A blood trail led from a spot in her garage to the trunk of *676 her car, with no sign of entry into her home, all of which indicates that Knox took the keys from Spears’s person while she was in the garage. Furthermore, it is most significant that Knox was in possession of Spears’s car and house keys-her personal property-at the time he was arrested. Miss.Code Ann. § 97-3-73 clearly establishes the necessary elements for proof of robbery, including the taking of personal property of another. The Legislature did not place a value in determining what constitutes personal property of another. Had the Legislature intended otherwise it would have so stated in the statute. This Court has stated, “The taking of property was the element relevant to establish each charge regardless of its value.” Holly v. State, 671 So.2d 32, 45 (Miss.1996). Thus, the fact that Knox took only the victim’s house and car keys w'hich were of mere nominal value is of no great concern.
805 So.2d at 531-32. This Court concluded its analysis of the robbery issue by stating:
Here, the elements of robbery by theft of house and car keys, the underlying felony, was clearly established and proven beyond a reasonable doubt. Again, when the defendant is discovered with the personal property of the deceased on his person it is entirely within reason for the jury to find that this fact in itself constitutes robbery. It is also within the jury’s province to conclude that Knox killed Spears intending to take her car and that he either failed to do so or intended to return at a later time.
Id. at 532.
¶ 229. Thus, our jurisprudence clearly establishes that the trial court did not err in sending the question of robbery to the jury in this case, and the jury was within its discretion to find Goff guilty of the robbery and, consequently, the capital murder.
CARLSON, P.J., RANDOLPH, LAMAR AND PIERCE, JJ., JOIN THIS OPINION.

. Wheat was tried separately for the murder of the couple. He was convicted of the wife's murder, but the jury could not agree on a punishment. This trial was for the murder of the husband.

. This was Duplantis's second trial. His first trial, which resulted in a death sentence, was overturned by this Court on grounds not related to the underlying robbery.