# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01604-COA

**ORLANDO LARDER SMITH A/K/A ORLANDO LARDERL SMITH**          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/21/2018 |
| TRIAL JUDGE: | HON. MARK SHELDON DUNCAN |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/09/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., GREENLEE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. A defendant was indicted on a charge of first-degree arson after he set fire to a duplex where his mother lived. A jury subsequently convicted him, and the lower court sentenced him as a habitual offender to serve twenty years.

¶2. On appeal, he argues that he was ambushed on the day of trial by untimely evidence. He also claims that the lower court violated his fundamental right to a fair trial when it introduced that evidence. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3.     Regina Evans lived in a rented duplex with her brother, grandson, and two sons, Cory Arrington and Orlando Smith.  She helped support the family of five by working night shifts.

¶4.     One night when Evans was scheduled to work, Smith came home late in her car. Arrington testified that when Smith returned, Smith and Evans began to argue about his late arrival.  The argument was so intense that it escalated into a fistfight between Smith and Arrington.  Arrington tried to run away from the fight, but Smith chased him out of the duplex.  The chase continued for a short distance before Arrington finally stopped and realized that Smith was no longer chasing him.

¶5.     Arrington returned home to find that his mother's half of the duplex was on fire.  Both Evans and her brother managed to escape.

¶6.     When interviewed by the Newton Police Department, Evans stated that Smith entered her bedroom and poured gasoline on her.  She also told police that when he returned home from chasing Arrington, Smith attempted to kick down the front door after he discovered that Evans had locked him out of the house.  According to Evans, she heard Smith ask someone to hand him a jug of gasoline.

¶7.     During a pre-trial conference on the morning of Smith's trial, the State proposed to introduce testimony, for the first time, from a forensic analyst of the Mississippi Forensics Laboratory.  The analyst would testify that three samples were submitted to the crime laboratory. One sample was taken from a section of the carpet of the duplex, another from a portion of the mattress, and the last from fire debris by the front door.  Each of the samples had tested positive for the presence of accelerants.  In other words, the evidence would

demonstrate that gasoline was the ignitable fluid responsible for the fire. The evidence would also ultimately show that the fire "was intentionally set by human hands."

¶8.    Smith's counsel asked the lower court to exclude the evidence on the basis that its introduction was untimely. He stated that had he known about the samples in advance, he would have had time to consult with Smith about them and allow Smith an opportunity to determine whether to proceed with the trial. Because the jury had not been empaneled, the lower court offered and granted Smith's counsel an opportunity to consult with Smith in a recess.

¶9.    When Smith's counsel returned from the recess, he announced that Smith wished to proceed with the trial but still objected to the introduction of the samples. The lower court then asked Smith's counsel what he would have done with the samples had he received them ahead of time. Smith's counsel stated that he would have requested independent testing of the samples. The lower court replied, "[Y]ou still can."

¶10.   At that point, the State asked Smith's counsel to clarify whether he wanted a continuance. Smith's counsel unquestionably replied, "[N]o."

¶11.   The lower court ultimately overruled Smith's objection to the evidence. At the end of trial, the jury returned a guilty verdict. Following the denial of a motion for a new trial, Smith now argues that the lower court erred in admitting the samples on the basis that it violated the rules of discovery.

## STANDARD OF REVIEW

¶12.   "In reviewing rulings of a trial court regarding matters of evidence, relevancy and

3

discovery violations, the standard of review is abuse of discretion." *Montgomery v. State*, 891 So. 2d 179, 182 (¶6) (Miss. 2004) (citing *Conley v. State*, 790 So. 2d 773, 782 (¶20) (Miss. 2001)).

## ANALYSIS

¶13. Smith argues that the lower court abused its discretion by admitting untimely evidence in violation of Rule 17.8 of the Mississippi Rules of Criminal Procedure.

¶14. Rule 17.8 states that "[b]oth the State and the defendant have a duty timely to supplement discovery." MRCrP 17.8. It further requires parties who discover "additional material or information which is subject to disclosure . . . [to] . . . promptly notify the other party or the other party's attorney of the existence of such material[.]" *Id*.

¶15. A court has discretion to apply three remedies when a party violates Rule 17.8. It can suppress the untimely evidence, grant the aggrieved party a continuance, or grant a mistrial. MRCrP 17.9(b)(2).

¶16. The Mississippi Supreme Court recently interpreted Rule 17.9(b)(2) by stating that parties who complain of prejudice and inadequate preparation due to a discovery violation must request a continuance. *Dancy v. State*, 287 So. 3d 931, 939 (¶31) (Miss. 2020). Otherwise, he has "waived the issue" on appeal. *Id*.

¶17. In *Dancy*, the defendant objected to the testimony of the State's expert witness. *Id*. at 939 (¶30). He argued the witness should not have been allowed to testify because the State failed to provide the defendant with the witness's name in its discovery. *Id*. Upon overruling the defendant's objection, the trial court offered the defendant a continuance so that the

4

defendant could "meet the proof of [the evidence]." *Id*. The defendant rejected the continuance but later renewed the objection in his motion for a new trial. *Id*. When he attempted to reintroduce the discovery issue on appeal, the Mississippi Supreme Court ruled that he had waived the issue due to his failure to seek a continuance. *Id*. at (¶32) (citing *McCullough v. State*, 750 So. 2d 1212, 1217 (Miss. 1999)). In the Supreme Court's opinion, the issue was procedurally barred. *Id*.

¶18. Smith's situation is identical to the *Dancy* case. After suggesting that preparation for his defense was jeopardized due to the State's alleged discovery violation, Smith was presented with an opportunity to continue the case. He rejected the continuance. Instead, he chose to proceed with trial despite his complaint that he needed more time to analyze the State's evidence. Smith now attempts to reintroduce the discovery issue on appeal. But as held in *Dancy*, Smith is procedurally barred from bringing the issue to this Court on appeal because he failed to seek a continuance.

¶19. Smith urges this Court to depart from this procedural rule and look for plain error, arguing "where fundamental rights are violated, procedural rules give way to prevent a miscarriage of justice." *Gray v. State*, 549 So. 2d 1316, 1321 (Miss. 1989). "A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved." MRE 103(f).

¶20. Yet this rule does not apply in Smith's case. A defendant "cannot decline the trial court's offer to grant him time to prepare a defense, and then argue to us that his defense was inadequate because he lacked time to prepare it." *Duplantis v. State*, 708 So. 2d 1327, 1336

(¶24) (Miss. 1998). In such a situation, a defendant is "not denied his fundamental right. He only chose not to exercise it fully." *Id*. at 1337 (¶30).

¶21. Accordingly, there is no error. The lower court properly offered Smith a continuance. Nonetheless, Smith declined. We decline to find any error in such a case.

## CONCLUSION

¶22. Based on the analysis above, Smith waived his right to challenge the introduction of the State's evidence on appeal when he failed to request a continuance. Indeed, he expressly stated that he did not want a continuance at all despite his preference for more adequate preparation. The lower court did not violate Smith's fundamental right to a fair and impartial trial because it offered the remedy of a continuance. Accordingly, the conviction and sentence in this case are affirmed.

¶23. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR.**