MAXWELL, J.,
for the Court:
¶ 1. David R. Faulkner appeals his seven felony convictions resulting from his alleged sexual abuse of two children in his care. The molestations and sexual batteries of one of the child victims began when the child was around six years of age and *145 spanned the course of approximately seven years. While Faulkner’s alleged abuse of the other child was less extensive in duration, it was similar in nature.
¶ 2. On appeal, Faulkner argues that one of the jury instructions constructively amended his indictment and that his convictions for the sexual battery and molestation of one of the children violated his right to be free from double jeopardy. Faulkner also insists that one of his fondling convictions was not supported by sufficient evidence and that all seven guilty verdicts are against the weight of the evidence. Finding no reversible error, we affirm.
Facts and Procedural History
¶ 8. Faulkner and his wife, Melissa, along with their four adopted children, moved to Carriere, Mississippi, in May 2006. The couple’s only adopted son, A.F.,[1] was thirteen years old at the time. In August 2006, the Faulkners agreed to serve as foster parents to another young boy, J.P., who was twelve. A.F. and J.P. shared a bedroom in the family’s trailer until February 2007, when J.P. left the Faulkners’ care.
¶ 4. In March 2007, the Mississippi Department of Human Services (DHS) received reports that Faulkner had sexually and physically abused A.F. and another boy at Faulkner’s previous Hancock County, Mississippi residence. After substantiating the sexual-abuse claims, DHS removed the four remaining children from the Faulkners’ home and contacted the Hancock County Sheriff’s Department. When investigating officers discovered Faulkner had also abused A.F. and J.P. in Carriere, they alerted the Pearl River County Sheriff’s Office.
¶ 5. Faulkner was arrested on May 21, 2007, and taken to the Pearl River County Jail. While in custody, he executed a Miranda[2] waiver-of-rights form and made numerous incriminating statements during a recorded interview. Faulkner admitted touching J.P.’s and A.F.’s penises with his hands and performing fellatio on both children. He also admitted he had instructed A.F. to place his mouth on J.P.’s penis. Faulkner was charged with two counts of sexual battery, three counts of fondling, and two counts of directing a minor to commit a felony.
¶ 6. At trial, A.F. testified that Faulkner began molesting and sexually battering A.F. with “[h]is hand and mouth” when he was six or seven years old. According to A.F., the sexual abuse began within “a month or so” after he moved in with Faulkner in 1999 or 2000 and continued “throughout the years [he] lived with him.” A.F. explained that Faulkner would also direct him and J.P. to engage in fellatio with one another.
¶ 7. J.P. also testified at trial. He recounted that Faulkner began sexually abusing him “within the first months” of his time with the Faulkners. According to J.P., Faulkner had performed fellatio on both him and A.F. and also had directed the boys to perform oral sex on one another. Faulkner testified in his own defense, denying any sexual contact with either boy. He also denied ever directing them to perform sexual acts with each other.
¶ 8. The jury found Faulkner guilty on all counts. The circuit judge sentenced him to life on each of the two sexual-battery counts, fifteen years on each of the three fondling counts, and twenty years on each of the two counts of instructing a minor to commit a felony. The judge or *146 dered all the sentences to run concurrently. Faulkner now appeals.
Discussion
¶ 9. Faulkner argues (1) Instruction 13 constructively amended Count VII of the indictment; (2) his convictions for the sexual battery and fondling of A.F. violated his double-jeopardy rights; (3) there was insufficient evidence to support his conviction for fondling J.P.; and (4) all seven verdicts are against the overwhelming weight of the evidence.
I. Variance Between Indictment and Jury Instruction
¶ 10. Mississippi imposes criminal liability on adults who direct or cause a person under the age of seventeen to commit any act that would qualify as a felony offense if committed by an adult. See Miss.Code Ann. § 97-1-6 (Rev.2006). Those convicted under this section face a possible $10,000 fíne and up to twenty years’ imprisonment. Id.
¶ 11. Count VII charged Faulkner with violating section 97-1-6 by directing A.F., a child under the age of seventeen, to commit a sexual battery on J.P., who was under the age of fourteen. The particular sexual battery alleged was forced fellatio between the two children—specifically, that Faulkner had directed A.F. to “put his mouth on the penis of J.P.” But at trial, the court granted a jury instruction that slightly differed from Count VII, permitting the jury to find Faulkner guilty on the count if it found Faulkner had directed A.F. to “put his penis in the mouth of [J.P.] Faulkner’s trial attorney did not object to this particular instruction, and the jury found Faulkner guilty on this count.
¶ 12. On appeal, Faulkner claims for the first time the variance between the indictment and instruction is fatal. He acknowledges his waiver but requests this court conduct plain-error review and reverse his conviction on Count VII. Though his failure to object to Instruction 13 bars review of the instruction, regardless of his procedural default, we find he suffered no substantial injustice from the variance.

A. Waiver

¶ 13. The primary purpose of an indictment “is to give the defendant fair notice of the crime charged.” Nix v. State, 8 So.3d 141, 144-45 (¶ 16) (Miss.2009) (citing Bell v. State, 360 So.2d 1206, 1208-09 (Miss.1978)). It must contain “the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation.” URCCC 7.06. Our supreme court recently explained that “once the grand jury hands down a true bill that alleges an accused committed a particular crime by engaging in certain conduct—absent waiver or a request for a lesser included offense—the accused must be prosecuted for that crime, and no other.” Decker v. State, 66 So.3d 654, 656 (¶ 6) (Miss.2011) (emphasis added). Here, we are faced with such a waiver.
¶ 14. Faulkner concedes he did not object to Instruction 13 as constructively amending the indictment, which may serve as a procedural bar to appellate review. See Rubenstein v. State, 941 So.2d 735, 774 (¶ 169) (Miss.2006) (finding that the defendant’s failure to object to a jury instruction as constructively amending the indictment to charge a murder-for-hire theory waives error). But this waiver aside, we still find no reversible error.

B. Plain-Error Review of the Materiality of the Variance

¶ 15. Where a party has forfeited an objection by failing to urge it at trial, an appellate court may exercise discretion *147 to correct the error—but only, where the error is clear or obvious and affects the party’s substantial rights. United States v. Olano, 507 U.S. 725, 731-34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). An appellate court “should correct a plain forfeited error affecting substantial rights if the error ‘seriously affects the fairness, integrity or public reputation of judicial proceedings.’ ” Id. at 736 (quoting United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)).
¶ 16. Considering whether Faulkner’s substantial rights were violated, we note not all variances between an indictment and jury instructions are fatal. To properly categorize an instruction as error, its “variance from the language of the indictment ‘must be material[.]’ ” Nix, 8 So.3d at 145 (¶ 16) (quoting Williams v. State, 445 So.2d 798, 806 (Miss.1984)). While trial judges should generally strive to craft jury instructions that track the indictment’s language, an instruction is not necessarily fatally defective for failure to do so if the instruction “accurately follow[s] the requisite elements of the crime.” Duplantis v. State, 708 So.2d 1327, 1344 (¶ 76) (Miss.1998)).
¶ 17. Count VII alleged Faulkner had directed A.F. to “put his mouth on the penis of J.P.,” but the jury was instructed it could convict Faulkner on this count if it found he had directed A.F. to “put his penis in the mouth of [J.P.] Assessing the effect of this variance on the integrity of Faulkner’s trial, we point out that while the language differed, the essence of the charged offense remained unchanged, as none of the requisite elements were substantially altered. The instruction still required the jury to find beyond a reasonable doubt that Faulkner, an adult, directed A.F., a minor, to commit sexual battery by engaging in fellatio with another child, J.P.
¶ 18. At trial, both children testified that Faulkner had instructed them to place their penises in the other’s mouth. And the jury was privy to the tape and transcript of Faulkner’s pretrial admission that he had directed A.F. to perform fellatio on J.P. Gauging potential prejudice, we find Faulkner’s defense was not hampered by the differing language in Instruction 13. Faulkner’s defense did not hinge on his insistence that he merely directed A.F. to submit to fellatio with J.P. but not perform fellatio on J.P. Rather, Faulkner wholly denied any involvement in sexual acts with the children. On these facts, we are unable to say any forfeited error in the jury instruction prejudiced Faulkner’s defense or otherwise affected his substantial right to a fair trial. At most, the variance was a slight flaw in the trial that did not seriously affect the public fairness of the judicial proceeding.
II. Double Jeopardy
¶ 19. Faulkner next argues his separate convictions for sexual battery and fondling amount to multiple punishments for the same offense, thus violating his constitutional protections against double jeopardy. Because there is sufficient evidence of distinct separate criminal acts, we reject his argument.
¶ 20. Under Mississippi law, sexual battery of a child and unlawful touching are separate and distinct criminal offenses. While sexual battery of a child requires some sort of penetration—including fellatio—unlawful touching does not. Compare Miss.Code Ann. § 97-3-97 (Rev.2006), with Miss.Code Ann. § 97-5-23 (Rev. 2006). Faulkner is correct that our supreme court has held that under “particular circumstances” when penetration is achieved by touching a child under the age of fourteen, fondling- or molestation is a *148 lesser-included offense of sexual battery. See Friley v. State, 879 So.2d 1031, 1035 (¶ 17) (Miss.2004). But Friley’s general holding—that it is not possible to penetrate a minor without touching the child— is not absolute. See Tapper v. State, 47 So.3d 95, 103 (¶ 30) (Miss.2010).
¶ 21. As our supreme court recently recognized in Tapper, “it is possible to commit an unlawful touching without committing sexual battery.” Id. And where sufficient evidence exists to support separate and distinct acts of fondling and sexual battery, separate indictable charges can properly stand without implicating jeopardy issues. Id.; see also Minor v. State, 62 So.3d 1002, 1005 (¶ 10) (Miss.Ct.App.2011). This is so even if the criminal acts are closely connected or based on a common nucleus of fact, which we find to be the case here. Id.
¶ 22. At trial, A.F. testified about a long-term pattern of deviant sexual abuse on Faulkner’s part. A.F. maintained that Faulkner had touched A.F.’s penis with his hands or mouth “throughout” the approximately seven-year span he lived with Faulkner—starting when A.F. was around six years old. A.F. recalled that the abuse continued when J.P. was placed with the family in August 2006, the month charged in both counts. A.F. also testified that around this time period Faulkner performed oral sex on him and that sometimes J.P. was present.
¶ 23. Faulkner personally acknowledged a litany of distinct molestations and one sexual battery. During a pretrial interview, Faulkner admitted that he had made A.F. touch his penis “about twenty” times. Faulkner also claimed to have participated in a separate act of penetration by putting A.F.’s penis in his mouth on one occasion. Faulkner’s admissions alone show distinct episodes of abuse. While he later denied molesting and battering A.F., the recording and transcript of his interview were in evidence and before the jury. Based on Faulkner’s own acknowledgments and A.F.’s testimony, we find sufficient evidence exists to support the separate sex-based charges.
¶ 24. To the extent Faulkner challenges the sufficiency of the evidence supporting the charged date of the offense, we note he failed to object on this ground at trial. Such a failure to object to the date charged in an indictment has been deemed a waiver. See Baker v. State, 930 So.2d 399, 404-05 (¶¶ 9-10) (Miss.Ct.App.2005). Still, this default aside, we find no prejudice to Faulkner since the evidence was sufficient for reasonable jurors to conclude some of the molestations and sexual batteries “occurred within reasonable limits, or reasonably near, the time frame set forth in the indictment.” McBride v. State, 61 So.3d 138, 150 (¶53) (Miss.2011).
III. Sufficiency of the Evidence for Count III
¶ 25. Faulkner also challenges the sufficiency of the evidence supporting Count III, arguing the State did not prove the molestation occurred “during August 2006,” as charged.
¶ 26. When assessing the legal sufficiency of the evidence, the critical inquiry is whether the evidence shows “beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existedf.]” Carr v. State, 208 So.2d 886, 889 (Miss.1968). In applying this standard, we consider all evidence in a light most favorable to the State. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citing Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Credible evidence consistent with guilt must be accepted as *149 true. We are instructed to give the State “the benefit of all favorable inferences that may reasonably be drawn from the evidence.” Jones v. State, 20 So.3d 57, 64 (¶ 16) (Miss.Ct.App.2009) (quoting Hughes v. State, 983 So.2d 270, 276 (¶ 11) (Miss. 2008)). And the jury resolves matters of weight and credibility.
¶ 27. Count III charged Faulkner with fondling J.P. during August 2006 — J.P.’s first month in the Faulkner home. Though J.P. did not mention that the molestation occurred in August, he did testify that the first instance of abuse had occurred “within the first months” of his stay. Faulkner suggests that because this slightly broader time frame differs from the charged date, the evidence is insufficient to sustain a conviction for the particular touching charged in Count III.
¶ 28. But an allegation of the date “of the offense is not an essential element of the offense charged in the indictment[.]” Daniels v. State, 742 So.2d 1140, 1143 (¶ 10) (Miss.1999) (citation omitted). And generally, failure to precisely prove an offense occurred during a specific time period is not grounds for reversal. “[W]ithin reasonable limits, proof of any date before the return of the indictment ... is sufficient.” Id. (citation and internal quotations omitted). Our supreme court has held that a child sex victim’s testimony that the abuse occurred within two months of the charged date was reasonably near, or within reasonable limits of, the charged time frame to support a sexual battery conviction. McBride, 61 So.3d at 150 (¶¶ 49-52). We similarly find that J.P.’s testimony that the fondlings started “within the first months” of his stay, which began in August 2006, was certainly sufficiently near the charged time frame to sustain the conviction on Count III.
IV. Weight of the Evidence for All Verdicts
¶ 29. Faulkner finally insists all seven verdicts preponderate heavily against the weight of the evidence.
¶ 30. In reviewing a challenge to the weight of the evidence, we consider the evidence in the light most favorable to the verdict. Bush, 895 So.2d at 844 (¶ 18) (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)). “[W]e will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id.
¶ 31. A jury is entitled to believe or disbelieve the testimony of any witness. Moore v. State, 969 So.2d 153, 156 (¶ 11) (Miss.Ct.App.2007). And our appellate courts have held that the unsupported testimony of a sex-crime victim “is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence, especially if the conduct of the victim is consistent with the conduct of one who has been victimized by a sex crime.” Riley v. State, 797 So.2d 285, 288 (¶10) (Miss.Ct.App.2001) (quoting Collier v. State, 711 So.2d 458, 462 (¶ 15) (Miss.1998)). The jury obviously found the victims’ testimony and the other evidence supporting the pattern of sexual abuse more credible than Faulkner’s defense. Viewing the evidence in the light most favorable to the jury’s verdicts, we find no injustice in allowing the jury’s verdicts to stand.
¶ 32. THE JUDGMENT OF THE PEARL RIVER COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, SEXUAL BATTERY, AND SENTENCE OF LIFE IMPRISONMENT; COUNT II, SEXUAL BATTERY, AND SENTENCE OF LIFE IMPRISONMENT; COUNT III, CHILD MOLES *150 TATION, AND SENTENCE OF FIFTEEN YEARS; COUNT IV, CHILD MOLESTATION, AND SENTENCE OF FIFTEEN YEARS; COUNT V, CHILD MOLESTATION, AND SENTENCE OF FIFTEEN YEARS; COUNT VI, DIRECTING A MINOR TO COMMIT A FELONY, AND SENTENCE OF TWENTY YEARS; AND COUNT VII, DIRECTING A MINOR TO COMMIT A FELONY, AND SENTENCE OF TWENTY YEARS, WITH ALL SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PEARL RIVER COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND FAIR, JJ„ CONCUR. JAMES, J., NOT PARTICIPATING.

. To protect the identities of the minors, we substitute initials for their names.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).