# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00430-COA

**LUIS FELIPE TORRES MENDEZ**                                      **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/27/2019 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/18/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND LAWRENCE, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Luis Felipe Torres Mendez was charged with committing five counts of sexual battery and four counts of child fondling against John.[1]  After a jury trial in the DeSoto County Circuit Court, Mendez was convicted on all nine counts and sentenced to serve a total of thirty-five years in the custody of the Mississippi Department of Corrections (MDOC) and placed on twenty years of post-release supervision.

¶2.     Mendez appeals his convictions, raising two assignments of error.  First, Mendez

---

[1] This case involves allegations of crimes against a minor, so a pseudonym (John) will be used in place of the victim's name.

asserts that Counts 4 and 5 of his indictment were fatally defective because they did not charge an essential element of the crime of sexual battery or, alternatively, that the trial court erred in constructively amending the indictment by including an element in the jury instructions not included in Mendez's indictment. Second, Mendez asserts that the nearly two-year date range in Mendez's indictment was too broad and, according to Mendez, failed to adequately inform him of the nature of the charges against him. Finding no error, we affirm Mendez's convictions and sentences.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶3. In June 2017, a DeSoto County grand jury returned a nine-count indictment against Mendez, charging him with committing five counts of sexual battery in violation of Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2014) and four counts of child fondling in violation of Mississippi Code Annotated section 97-5-23 (Rev. 2014).

¶4. Mendez's jury trial began on February 25, 2019. The State's first witness was John's mother, Floriberta Ochoa ("Ochoa"). She testified that when John was six years old, he started having difficulties going to the bathroom. He would not use a public restroom and often soiled his underwear. She was concerned and took him to see a doctor, but she was offered little advice. In addition to the bathroom issues, Ochoa testified that she noticed John's attitude and behavior began to change. He would throw himself on the floor and get upset. She testified that she would always try to find out what was causing him to be upset, and finally, one day, she asked him to tell her what was wrong; John told her that "Luis put

2

his penis in his [(John's)] behind." John told her this in late February 2017.

¶5. Ochoa testified that "Luis" is the defendant, Mendez. Mendez was Veronica Moreno's live-in boyfriend. Moreno was Ochoa's roommate. Moreno, her two children, Ochoa, and John shared a two-bedroom single-wide trailer owned by Moreno's mother. At some point after Moreno and Ochoa (and their children) moved into the trailer, Mendez also moved into the trailer.

¶6. After John told his mother about what Mendez had done, she took him to Dr. Javel Granados, who was a local physician. Dr. Granados was the State's second witness. He testified that he saw John, accompanied by his mother, on February 28, 2017. Ochoa reported to him that a man had been "messing with" her son (John). John had just turned seven years old a month earlier when Ochoa brought him to see Dr. Granados. Dr. Granados testified that he had no reason to doubt that what John's mother reported was true. He noted that it would be to her disadvantage to lie. Dr. Granados testified that Ochoa told him about John's bathroom issues and that he experienced nightmares on a regular basis. He further testified that these were indicators that John had been the victim of abuse. Dr. Granados testified that there were no inconsistencies with John's medical history and his (Dr. Granados's) findings. Dr. Granados referred John to Le Bonheur (a children's hospital), and he contacted the Hernando Police Department to report the abuse on the same day (February 28, 2017).

¶7. Saul Marquez was the State's next witness. He is a friend of John and his mother, and

3

he regularly served as their translator at doctor appointments and other places. Marquez drove John and Ochoa to Le Bonheur. Marquez testified that at Le Bonheur he acted as John's translator with the doctor and that John described that Mendez had sodomized him.[2] Marquez testified that John's demeanor seemed "ashamed" and that John did not seem to want to talk about it. Marquez testified that he did not believe that John was lying or that John was being asked questions by the medical staff "in a way that made [him] feel like they were trying to get [John] to say something." Marquez thought John was honest in what he told the doctors.

¶8. Officer Michael White of the Hernando Police Department testified that he contacted Le Bonheur's child protection service officer after he learned of the alleged abuse. Officer White sent an on-call investigator to the hospital to gather information. Based on what John reported, it was suspected that the last instance of abuse had occurred two weeks before the investigation began on February 28, 2017. Officer White arranged for a forensic exam to be conducted at a child advocacy center.

---

[2] Specifically, Marquez testified:

| [COUNSEL FOR THE STATE:] | Can you relate to the ladies and gentlemen of the jury what it was specifically that [(John)] alleged happened? |
|---|---|
| [MARQUEZ:] | Basically, penetration with the man's [(Mendez's)] penis and his [(John's)] rectum area. |

¶9.     Officer White watched the interview on a closed-circuit televison.  He testified that during that interview, John said "in his own words that [(Mendez)] put [a] white thing on his, what he referred to as his, front thing," and that when Mendez "stuck his front thing into the child's, what he called, back, that it hurt him very badly."  John described multiple instances of abuse.  In listening to John's account of what happened, Officer White came to realize that John had been describing a condom.  Based on the information that John disclosed in his forensic interview, Officer White obtained a search warrant and was able to find a white box of condoms in the same location where John said they would be: in Mendez's closet.

¶10.    Nicole Denfip was the child advocacy specialist who conducted John's forensic interview on March 9, 2017.  She testified that when the interview was scheduled, she was advised that John had reported having had suffered sexual abuse.  No other details were provided to her.  Denfip testified that within minutes of the start of the interview, John spontaneously disclosed that he had been abused.  She testified his statements were consistent throughout the interview, and he maintained that he had been abused by Mendez.  Denfip testified that John's statements were consistent with sexual abuse.  A video of his interview was submitted to the jury.  In that interview, John described multiple instances of abuse and described the various ways that Mendez had abused him.

¶11.    John also testified at trial; he was nine years old at that time.  He testified that Mendez began abusing him when he was seven years old, when he was in the first grade.  John testified that Mendez "put his privacy in [(John's)] bottom a lot of times."  John clarified that

5

when he said "privacy," he was referring to Mendez's penis. John testified that the abuse would occur when his mother was at work and that the abuse took place in Mendez's bedroom. He testified that he was abused by Mendez on a daily basis and that it happened a lot of times.

¶12. John explained that on the first occasion of abuse, Mendez took John's clothes off and then took off his own clothes. Mendez put a "long," "white thing" on his penis, which he got out of his closet. John explained that the wrapper was gold but that the condom was white. Mendez then put his penis in John's bottom. In addition to multiple reports of penetration, John testified that Mendez would touch him inappropriately. Mendez would also make John touch him inappropriately. John testified that his bathroom issues began after the abuse started. Before that, he had not had problems. John did not report the abuse at first because he was scared. John testified that the last instance of abuse occurred one week before he reported the abuse to his mother in February 2017.

¶13. After the State rested its case, the defense moved for a directed verdict, which the trial court denied.

¶14. Veronica Moreno, Mendez's girlfriend, testified in his defense. She testified that she used condoms in her sexual relationship with Mendez. Moreno testified that she was in the process of obtaining her citizenship via a "U-VISA" because she had been a victim of domestic violence. Moreno testified that John's mother (Ochoa) knew that Moreno was in the immigration process. Adrianna Moreno was also called to testify for the defense. She

6

testified that she took care of John when Ochoa was at work and had not seen any marks on John's back or buttocks. She also testified, however, that John began going to the bathroom in his pants (from his "back [end]") when he was about six or seven years old. It would happen about two or three times a day during this time period (when he was six or seven years old).

¶15. Mendez testified in his own defense. He testified that as soon as he moved into the trailer, Ochoa acted offended by his presence. He denied having ever been alone in the trailer with John and denied having ever been sexually inappropriate with him.

¶16. The defense rested, and the State did not call any rebuttal witnesses. The defense renewed its motion for a directed verdict, which was denied. The trial court then conducted the jury instruction conference. The defense did not object to any of the State's jury instructions or the Court's standard jury instructions.

¶17. After the trial court charged the jury and the closing arguments were given, the jury deliberated and returned a guilty verdict against Mendez on all nine counts. The trial court sentenced Mendez to serve a total of thirty-five years in the custody of the MDOC and placed him on twenty years of post-release supervision. Mendez filed a post-trial motion, which the trial court denied. Mendez appeals.

**STANDARD OF REVIEW**

¶18. "The question of whether an indictment is fatally defective is an issue of law and deserves a relatively broad standard of review by this Court. A review of the legal

7

sufficiency of an indictment must be reviewed de novo." *Young v. State*, 119 So. 3d 309, 313 (¶10) (Miss. 2013) (citations omitted).

## DISCUSSION

### I.     The Indictment: Counts 4 and 5

¶19.    For the first time on appeal, Mendez argues that Counts 4 and 5 of his indictment failed to charge the crime of sexual battery. He asserts that although the indictment alleges that Mendez committed sexual battery by engaging in sexual penetration "by placing his anus to [the child's] finger" and "his mouth to [the child's] penis," the use of the word "to" instead of "into" made this an insufficient allegation of sexual battery.

¶20.    The record reflects that Mendez did not object to the form of the indictment during trial. Nevertheless, "[o]bjections to the sufficiency of an indictment may be raised for the first time on appeal[] because the sufficiency of an indictment is a matter of jurisdiction." *Payne v. State*, 282 So. 3d 432, 436 (¶13) (Miss. Ct. App. 2019).

¶21.    Regarding the sufficiency of the indictment, Rule 7.06 of the Uniform Rules of Circuit and County Court Practice[3] provides:

> The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them.

---

[3] Mendez's indictment is dated June 22, 2017, and thus Uniform Rule of Circuit and County Court Practice 7.06 applies. The Mississippi Rules of Criminal Procedure became effective July 1, 2017.

URCCC 7.06.

¶22.    As this Court recognized in *Williams v. State*, 169 So. 3d 932, 935 (¶9) (Miss. Ct. App. 2014), "[t]he primary purpose of an indictment is to give a defendant fair notice of the crime charged." In particular, "[a]n indictment must contain (1) the essential elements of the offense charged, (2) sufficient facts to fairly inform the defendant of the charge against which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense." *Id.*

¶23.    Mississippi Code Annotated section 97-3-95 provides that "[a] person is guilty of sexual battery if he or she engages in sexual penetration with . . . [a] child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child." Miss. Code Ann. § 97-3-95(1)(d). Mississippi Code Annotated section 97-3-97 (Rev. 2014) defines "sexual penetration" as follows:

> "Sexual penetration" includes cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body.

¶24.    Mendez's indictment charged:

COUNT 4

> That LUIS FELIPE TORRES MENDEZ . . . between the dates of May 14, 2015 and February 28, 2017 . . . did willfully, unlawfully[,] and feloniously, engage in sexual penetration with [John], a child under fourteen (14) years of age; and LUIS FELIPE TORRES MENDEZ being at that time a person twenty-four (24) or more months older than [John], by placing his mouth to the penis of [John], in direct violation of [Mississippi Code Annotated section] 97-3-95(1)(d)[.]

9

COUNT 5

> That LUIS FELIPE TORRES MENDEZ . . . between the dates of May
> 14, 2015 and February 28, 2017. . . did willfully, unlawfully[,] and
> feloniously, engage in sexual penetration with [John], a child under
> fourteen (14) years of age; and LUIS FELIPE TORRES MENDEZ
> being at that time a person twenty-four (24) or more months older than
> [John], by placing his anus/rectum to the finger of [John], in direct
> violation of [Mississippi Code Annotated section] 97-3-95(1)(d)[.]

¶25.    For the reasons addressed below, we find that the use of the words "engaged in sexual penetration" in combination with a description of the specific means of sexual penetration was sufficient to charge the crime of sexual battery in Counts 4 and 5 of the indictment. Whether the term "to" or "into" is used with respect to the alleged form of penetration in John's mouth or Mendez's anus is immaterial because "the method of achieving sexual penetration is not an element of the offense," as this Court explained in *Chandler v. State*, 789 So. 2d 109, 112 (¶7) (Miss. Ct. App. 2001). Although *Chandler* involved an amendment to the indictment, we find that this Court's determination on this particular point is relevant here.

¶26.    In *Chandler*, the defendant was accused of sexual battery, and the trial court allowed the State to amend count two of the indictment by eliminating certain language because the proof at trial "pointed to acts of fellatio rather than digital penetration," which was originally alleged in count two. *Id.* at 111 (¶3). The amended count two, "with the eliminated portions stricken, [provided that the defendant] 'did wilfully, unlawfully and feloniously engage in sexual penetration of J.T., a female child under the age of fourteen years, contrary to and in

10

violation of Section 97-3-95(1)(d) of the Mississippi Code.'" *Id.*

¶27.    Chandler asserted that eliminating *how* sexual penetration was achieved was a substantive change and prejudiced his defense. *Id.* at (¶5). This Court disagreed, finding:

> *Penetration is the essence of the crime of sexual battery* and the amendment did not materially alter the facts which were the essence of the offense on the face of the indictment . . . . The amendment did not change the crime charged nor add new elements to the charge of sexual battery *since the method of achieving sexual penetration is not an element of the offense*. Chandler cannot credibly claim he did not know for what crime he was being tried.

*Id.* at 112 (¶7) (emphasis added).

¶28.    The Mississippi Supreme Court's decision in *Hennington v. State*, 702 So. 2d 403 (Miss. 1997), also supports our determination on this issue. In that case the defendant was convicted of the sexual battery of a child. *Id.* at 405 (¶1). The indictment alleged that Hennington "did willfully, unlawfully, and feloniously engage in sexual penetration *of* A.R., a male person under the age of fourteen years . . . ." *Id.* at 407 (¶12) (emphasis added). At trial, the facts showed that the defendant had oral sex with the child victim. *Id.* For this reason, Hennington asserted that he was entitled to a directed verdict because the indictment should have alleged that he engaged in sexual penetration *with* rather than *of* the child victim. *Id.* The supreme court rejected this argument, recognizing that "[w]hile it is true that the indictment did not use the exact language of the statute, the essential elements for the crime of sexual battery were contained in the indictment. . . . *Whether there was penetration "of" or penetration "with" A.R. is not an essential element of the crime and is not relevant*." *Id.* at 408 (¶20) (emphasis added).

¶29.  As the courts recognized in both *Chandler* and *Hennington*, *how* penetration is achieved is "not an essential element of the crime and is not relevant." *Id.*; *Chandler*, 789 So. 2d at 112 (¶7).  As such, we find that it does not matter whether the indictment should have stated that Mendez achieved sexual penetration by forcing the child's penis *into* his mouth or by forcing the child's finger *into* his anus/rectum because that is not an element of the offense charged.  Mendez was informed through his indictment that he was accused of committing sexual battery by engaging in sexual penetration with a child by placing his mouth to John's penis and by placing his anus to John's finger.  *See Hennington*, 702 So. 2d at 408 (¶17) ("[P]roof of skin to skin contact between a person's mouth, lips or tongue and the genitalia of a [person's] body, whether by kissing, licking or sucking, is sufficient proof of sexual penetration[.]" (internal quotation marks omitted)); *see also Moton v. State*, 999 So. 2d 1287, 1293 (¶20) (Miss. Ct. App. 2009) ("Penetration, however slight, is sufficient to establish the penetration element of sexual battery." (internal quotation mark omitted)).

¶30.  We find that Mendez's indictment contained the essential elements of the crime of sexual battery and that Mendez was provided "sufficient facts to fairly inform [him] of the charge against which he must defend," as well as "sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense." *Williams*, 169 So. 3d at 935 (¶9); URCCC 7.06.  It was not defective, and, accordingly, we find that Mendez's defective-indictment assertions on this point are without merit.

¶31.  Mendez asserts in the alternative that there was an improper variance between Count

12

5 of his indictment (alleging Mendez placed his anus/rectum to John's finger) and jury instruction number 12 that addressed the elements for Count 5. The jury instruction replaced the word "to" (that had been used in the indictment) by the word "into." It therefore provided, in relevant part, that "Mendez did engage in sexual penetration . . . [w]ith [John] . . . [b]y having [John] place his finger *into* the anus of [Mendez]." (Emphasis added).

¶32. The record reflects that jury instruction number 12 was given without objection at trial. Nevertheless, Mendez now asserts that the instruction amounted to an unlawful constructive amendment to his indictment.[4] Because he failed to object at trial, Mendez has waived this issue. *See Rubenstein v. State*, 941 So. 2d 735, 774 (¶169) (Miss. 2006) (finding that the defendant waived any error by failing to object to a jury instruction as constructively amending his indictment). Under these circumstances, "[w]here a party has forfeited an objection by failing to urge it at trial, an appellate court may exercise discretion to correct the error—but only where the error is clear or obvious and affects the party's substantial rights." *Faulkner v. State*, 109 So. 3d 142, 146-47 (¶15) (Miss. Ct. App. 2013).

¶33. In *Faulkner*, this Court found that a variance between the wording of the defendant's indictment and the elements of the charge in the jury instruction did not constitute plain error and thus did not warrant reversal. *Id.* at 147 (¶18). We find *Faulkner* instructive. In that

---

[4] Mendez also asserts that his conviction under Count 4 should be reversed for the same reason, but the record reflects that there was *no* variance between Count 4 of the indictment and the elements instruction for that count (jury instruction number 11). As such, we find Mendez's assertion as to Count 4/jury instruction number 11 wholly without merit.

case, count seven of Faulkner's indictment "alleged Faulkner had directed A.F. to 'put his mouth on the penis of J.P.,' but the jury was instructed it could convict Faulkner on this count if it found he had directed A.F. to 'put his penis in the mouth of [J.P.]'" *Id.* at (¶17). Faulkner asserted that the instruction constructively amended the indictment by reversing the roles of the victims who were forced to participate in fellatio against each other. *Id.* at 146 (¶¶11-12).

¶34.   In analyzing this issue on appeal, this Court recognized that "not all variances between an indictment and jury instructions are fatal. To properly categorize an instruction as error, its variance from the language of the indictment must be material." *Id.* at 147 (¶16) (internal quotation marks omitted). Continuing, this Court found that "[w]hile trial judges should generally strive to craft jury instructions that track the indictment's language, an instruction is not necessarily fatally defective for failure to do so if the instruction 'accurately follow[s] the requisite elements of the crime.'" *Id.* (quoting *Duplantis v. State*, 708 So. 2d 1327, 1344 (¶76) (Miss.1998)).

¶35.   Addressing Faulkner's assertion, the Court found that the variance did not "prejudice[] Faulkner's defense or otherwise affect[] his substantial right to a fair trial." *Id.* at (¶18). As the Court observed, "Faulkner's defense did not hinge on his insistence that he merely directed A.F. to submit to fellatio with J.P. but not perform fellatio on J.P. Rather, Faulkner wholly denied any involvement in sexual acts with the children." *Id.* Additionally, the Court found that "the essence of the charged offense remained unchanged, as none of the requisite

14

elements were substantially altered." *Id.* at (¶17). As such, the Court found that no plain error occurred. *Id.* at (¶18).

¶36. The same analysis applies here. We find that the variance between Count 5 of the indictment and jury instruction number 12 was not material, as "none of the requisite elements" of sexual battery were altered. As we have discussed above, *how* penetration occurs is not an essential element of a sexual battery claim. *Hennington*, 702 So. 2d at 408 (¶20); *Chandler*, 789 So. 2d at 112 (¶7). We do not find that the variance in the wording changed the "essence of the charged offense." *Faulkner*, 109 So. 3d at 147 (¶17).

¶37. Nor do we find that Mendez was prejudiced in his defense by this usage, or that his substantive rights were affected so as to constitute plain error. Our review of the record shows that Mendez's trial strategy was to generally deny that he touched John in any manner. We find nothing in the record that indicated that Mendez intended to present evidence specifically defending himself against an assertion that he "engage[d] in sexual penetration . . . [w]ith [John] . . . [b]y having [John] place his finger *into* [Mendez's] . . . anus" rather than "to" his anus. *Faulkner*, 109 So. 3d at 147 (¶18). For these reasons, we find Mendez's constructive-amendment issue without merit upon our plain error review.

## II. The Date Ranges in the Indictment

¶38. Mendez asserts that the indictment was defective because "[e]ight of the nine counts of Mendez's indictment allege the crimes occurred between May 14, 2015 and February 28, 2017—a span of nearly two years." According to Mendez, this "broad" date range interfered

15

with his ability to defend himself, other than asserting a general denial.

¶39. In addressing this issue, we recognize that Uniform Rule 7.06(5) (in effect when Mendez was indicted), as well as Mississippi Rule of Criminal Procedure 14.1(a)(2)(E) (in effect when Mendez was tried in February 2019), both provide that "[a]n indictment shall . . . include . . . [t]he date, and, if applicable, the time at which the offense was alleged to have been committed." However, the supreme court and this Court have both recognized that "a specific date in a child sexual abuse case is not required so long as the defendant is fully and fairly advised of the charge against him." *Jenkins v. State*, 131 So. 3d 544, 549 (¶14) (Miss. 2013) (internal quotation marks omitted); *see also, e.g.*, *Shoemaker v. State*, 256 So. 3d 604, 610 (¶22) (Miss. Ct. App. 2018). For the reasons addressed below, we find that the date range in Mendez's indictment was adequate to inform him of the charges against him and were limited enough to provide notice to Mendez in order to defend himself against the charges.

¶40. Our decision in *Shoemaker* supports our determination here. In *Shoemaker*, the Court rejected the defendant's contention that his indictment, containing a two-year date range for alleged sexual offenses against his step-granddaughter, was defective because "due to the broad date ranges identified, his indictment failed to specifically and adequately allege criminal conduct for which [he] could viably assert a theory of defense[, especially an alibi defense]." *Shoemaker*, 256 so. 3d at 610 (¶21). Mendez makes the same argument in this case.

16

¶41. The victim in *Shoemaker* "testified the sexual misconduct occurred over a five-year to seven-year time span [and] . . . occurred so often she could not give specific dates and times . . . . [The] the trial testimony [further indicated] that Shoemaker and [the victim] had constant interaction with each other during the period at issue." *Id.* at 612 (¶28). Under these circumstances, this Court found that "the State could not narrow the date range provided in [the defendant's] indictment counts any more than it already did," and therefore found that the defendant's assignment of error on this point was without merit. *Id.*

¶42. The same circumstances are present in this case. The record reflects that the State could not narrow the date range any more than it did. The dates in the indictment were pinpointed to correspond with the ages when John experienced issues going to the bathroom. Witnesses testified that those issues began when John was six or seven years old, and John stated that those issues only began after Mendez began abusing him. John also testified that the abuse occurred on a daily basis and that it happened "a lot of times." Additionally, Mendez lived in the same trailer as John, and, according to John, the abuse would happen when his mother was at work. As in *Shoemaker*, the testimony at trial showed that Mendez and John interacted with each other frequently, if not every day. We find that under these circumstances, Mendez's assignment of error on this issue is without merit. *Id.* at 611-12 (¶¶25-29).

¶43. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**

17